[No. 413.    August 19, 1891.]

## MITCHELL A. MINOR ET AL., APPELLANTS, v. J. H. MARSHALL, APPELLEE.

MECHANICS' LIEN—SUFFICIENCY OF NOTICE—SEC. 1524, COMP. LAWS, 1884—CONSTRUCTION OF STATUTES.—Statutes providing for mechanics' liens are in derogation of the common law, and, as such, must be strictly construed. By a strict construction is not meant an arbitrary or inequitable construction, or such as would give the owner, or third parties, an opportunity to take advantage of legal technicalities to deprive the laborer of his just wages, but such a construction as will require a substantial compliance with the statute; and this requirement of the statute (Comp. Laws, 1884, sec. 1524) is met by a notice which alleges that the debtor "was the owner or reputed owner" of the property. Finane & Elston v. Las Vegas H. and Imp. Co., 3 N. M. (Gil.) 415; Hobbs v. Spiegelberg, Id. 362, distinguished.

ID.—VERIFICATION OF NOTICE—SUFFICIENCY OF.—A verification to a notice of lien which states that the "abstract of indebtedness mentioned and described in the foregoing notice is true and correct" is not a sufficient compliance with the statute, which, after prescribing the several statements which shall be embodied in the claim, requires that the "claim must be verified." Sec. 1524, Comp. Laws, 1884.

APPEAL, from a judgment in favor of defendant, from the Third Judicial District Court, Sierra County. Judgment affirmed; FREEMAN, J., dissenting.

The facts are stated in the opinion of the court.

J. MORRIS YOUNG and EDWARD L. BARTLETT for appellants.

ELLIOTT & PICKETT for appellees.

SEEDS, J.—This is a suit in equity brought to foreclose a number of liens filed against the "Humming Bird" mine, in the county of Sierra, as allowable under section 1532 of the Compiled Laws of 1884 of this territory. To the bill there was interposed a demurrer, which was sustained by the lower court and the bill dismissed. The plaintiffs assigned various grounds of

error growing out of the sustaining the demurrer. It might be stated here that it would be a better practice for the trial judge, in passing upon a demurrer which is predicated upon various grounds, to specifically state and have it made a matter of record upon which grounds, if less than all, he bases his judgment; for it may be that his judgment was based solely upon one ground, while the record necessarily brings up all the grounds formally alleged in the pleading, and requires a decision upon points which may not be decisive of the case—being harmless error, and really in accordance with the judge's holding; yet the announcement here, though in fact the same as in the court below, would seem to be against him.

The material points to be considered, under the assignment of errors, are: First, were the notices of the claims for the liens, filed by the plaintiffs, insufficient because they alleged that the defendant "was the owner, or reputed owner," of the mine against which the liens were sought to be established; and, second, were the notices of the claims invalid because said claims were not properly verified?

The appellants contend, in the first place, that, as the bill sets out the action properly, the demurrer admits the facts thus pleaded to be true, and, therefore, it was error to sustain the demurrer. But this contention must be based upon the supposition that the facts pleaded were well pleaded, and were not conclusions of law. Now, one of the material facts in the case is, were the legal notices of claim given in accordance with the statute? If they were not, the case must fail. If, too, that fact was so pleaded, as that the notices appear in the bill, and their illegality is seen upon the face of the pleading, then certainly that fact can be reached by demurrer. The notices of claims were all made parts of the bill as exhibits, and as parts of the allegations of the facts

*MECHANICS' lien: sufficiency of notice.*

required.   This being true, the demurrer was the proper
pleading by which to raise the question of their suffi-
ciency.

As a predicate for the discussion of the errors
raised by this record, it is insisted by the appellants,
and denied by the appellee, that the mechanics' lien
law should be liberally construed.   Each party contends
vigorously that his exposition of that issue is supported
by the adjudications of this court.   It must be con-
ceded that in some way two cases, delivered at the same
term of this court, have in their opinions statements
which are diametrically opposed to each other.   In the
case of Hobbs v. Spiegelberg, 3 N. M. 362, Judge
AXTELL says: "We fail to see how this statute is in
derogation of the common law;" and, "Nor do we
think that the doctrine of liens is either new, in dero-
gation of the common law, or inequitable."   A careful
consideration of this case will convince one that these
remarks were wholly unnecessary to a determination
of the case, and hence could not be enunciating a prin-
ciple to bind the court unless reversed.   The fact is
that the doctrine of "in derogation of the common
law" is invoked simply to uphold a strict construction
in a given case when the facts call for a construction;
but Judge AXTELL in this very case, when making the
statements above quoted, continuing said:   "Nor is it
possible for us to see any necessity for construction."
This case is, then, no authority upon the question as
to how the mechanics' lien law should be construed.
In the case of Finane v. Las Vegas Hotel & Imp. Co.,
3 N. M. 415, however, the court undertook specifically
to place a construction upon a portion of the statute in
regard to the verification of the claim, and in passing
upon the principle to govern in the construction of the
whole statute Judge BELL says:   "The rights conferred
by these statutes are purely statutory, and were utterly
unknown to the common law or in chancery.   They
are in violent derogation of the rights of property at

the common law, and must be strictly construed."
This enunciation of the principle governing in such
cases does not conflict with the holding in the case of
Hobbs v. Spiegelberg, but only with language not
necessary to the case, and hence must be accepted by
us, unless we are ready to overrule it.   The statement
that mechanics' lien laws are in derogation of the
common law can hardly be successfully controverted;
for they place liens upon property which before and
under the common law had been sacredly protected
against any but those of a mortgage or a judgment.
More, they render it possible to incumber an estate,
even against the knowledge, and, in any case, against
the wish, of the owner.   Phil. Mech. Liens, sec. 9.

But by "strict construction" it is not meant an
arbitrary, inequitable, or harsh construction—one
which will give the property owner, or even third par-
ties, the opportunity to take advantage of technicalities
to deprive an honest laborer of his wages—but such a
construction as will require a substantial compliance
with the statute; such a one as, while it protects the
honest laborer, can not be made the means by a loose
and uncertain construction of perpetrating fraud, or of
holding out inducements thereto.   Hooper v. Flood,
54 Cal. 218.   A strict construction is fully met which
simply requires the laborer to bring himself by his
notice clearly within the provisions of the statute; and
when this is done the construction is the one adopted
by the supreme court of the United States.   Davis v.
Alvord, 94 U. S. 545.   The terms "strict" and
"liberal" are comparative simply, and in most of the
cases are used without definition.   They are only used
in the light of the facts of each specific case.   Such an
interpretation as will demand a substantial compliance
with all the requirements of the law will be sufficient.
With this character of a construction we are satisfied
that the rights of all parties will be protected.

1.   Were, then, the notices of claim of liens insufficient, because they alleged that the defendant "was the owner or reputed owner" of the mine in question? The argument is that the law requires a distinct statement of who the owner or reputed owner is, and that the proof must meet that single specific allegation; that in this case the allegation is in the disjunctive, the allegation being one or the other, and therefore it is erroneous.   Does this statement in any way mislead the persons for whom the notices are intended?   The object of the statute is to give the laborer a lien for his wages upon the property, as against the owner or reputed owner.   It makes no difference which the party is; in either case the laborer is entitled to the lien providing he states, with other things, who the owner or reputed owner is, if he knows.   He may be uncertain whether the party is the owner or reputed owner.   If, then, in his notice, he says to the world that a certain person is the owner or reputed owner, no one is damaged; and if, upon foreclosure proceedings, he proves either allegation, he certainly substantiates his claim upon that point.   In the case of Arata v. Tilluirium G. &. S. Mfg. Co., 65 Cal. 340, the court held the allegation of "owner and reputed owner" a substantial compliance with the law, for the party could have been both.   So, in this case, he can be either, and, if so, the requirement of the statute has been met.   If, then, the learned judge passed upon this point adversely to the plaintiffs in the court below, as it must be presumed he did, from the form of the record, it was error.   But, in any view of the case as here presented, it was a harmless error.

2.   Were the notices of claim of liens properly verified?   The verification was substantially the same VERIFICATION of as to each claim.   The claims themselves notice.   set out fully what the statute requires, and in all but one case were signed by the party asking the

lien.  To the notices were attached affidavits, also
signed by the parties, and sworn to before a notary.
Those affidavits necessarily refer to the claims to which
they are attached.  Do they substantially verify the
claim?  The following is one of the affidavits:  "On
this * . * * personally appeared * * * before
me, and who, being by me first duly sworn, on his oath
states that the abstract of indebtedness mentioned and
described in the foregoing notice is true and correct,
and that there is still due and owing and unpaid to him
from the said * * * mine and its owner the sum,"
etc.  Section 1524, Compiled Laws, 1884, states what
the claim should be, and what should be verified.  A
part of the section is as follows: "A claim containing
a statement of his demands, after deducting all just
credit and offset, with the name of the owner or
reputed owner, if known, and also the name of the per-
son by whom he was employed, or to whom he fur-
nished the materials, with a statement of the terms, time
given, and condition of his contract, and also a
description of the property to be charged, which claim
must be verified by the oath of himself, or of some
other person."  It is very evident that the claim con-
tains certain specific statements,—five in number,—
any one of which being absent annihilates the claim of
lien.  Phil. Mech. Liens, sec. 342.  It is also plain
that the claim—not any one or more averments of the
claim less than all, but the claim itself—must be veri-
fied; and, if such claim is not verified, it is no notice,
and binds no one; it raises no lien whatever.  Finane
v. Las Vegas Hotel & Imp. Co., 3 N. M. 415.  This
verification need not be in the exact language of the
statute; for, if it substantially meets the requirements
of the statute, it is all that is necessary.  But substan-
tial compliance is not met when the verification does
not cover all the essential elements of the claim; or
when, under the guise of substantial compliance, the

court must add something to the affidavit or oath by intendment in order that the statute may be complied with. It is not necessary in this territory that there should be an affidavit to the claim. It is sufficient if the claim is signed by the party, and that the notary or other proper officer, under his signature and seal, says that it is sworn to by the person signing it. But the want of a verification, or of a sufficient verification, is a defect which goes to the whole claim, and can not be amended. Phil. Mech. Liens, sec. 366. It is fatal, though the party actually swear to the claim, if the notary has neglected to sign the verification or attach his seal. Finane v. Las Vegas Hotel & Imp. Co., supra. While it was not necessary for the claimant to make an affidavit, he has done so, and in it he has specifically stated what he has sworn to, and by that he is bound. He swears "that the abstract of indebtedness mentioned and described in the foregoing notice is true and correct." Can this, in substance, mean the whole claim above set out? It is contended that the words "abstract of indebtedness" are intended to mean the whole claim, and that we should so interpret it. But in the claims themselves there is a specific statement of a moneyed indebtedness, placed in a brief form, as the law requires. To that brief statement of indebtedness the affidavit naturally relates. Are we justified, in order to sustain the lien, to suppose that it means more than it says? We do not hold that the verification should be the language of the statute, or that it should necessarily use the term "claim." Any set of words unmistakably pointing to the whole claim will be sufficient. If the affidavit had said the "above abstract," as it might fully cover the claim without great violence to the language, it might have been sufficient. The claimant was not satisfied with that, but limited its application by the use of the qualifying words, "of indebtedness." The word "abstract,"

standing alone, would have a general or indefinite meaning, but in this case it is immediately limited when the words "of indebtedness" are added to the single thought of owing money. The statute says he must give a statement "of his demands after deducting all just credit and offset." That is a statement of the indebtedness; but there are four other essentials of the claim, all of which must be verified, or the lien is not perfected. In this case the indebtedness is all that is verified. The only apparent answer to this line of argument is to contend that there is no indebtedness unless all the five essentials of the notice are present; that indebtedness is only a fact when it grows out of the presence of the five requirements of the statute constituting a good notice. But this is palpably fallacious, for this reason; the indebtedness is a personal claim independent of the lien. Can it be said that this defendant could not have been indebted to these plaintiffs unless he had been the owner or reputed owner of the mine? Certainly not. He might have been a contractor, as in the Las Vegas Hotel case, in which he would have been indebted to the plaintiffs for working for him in the mine, yet it would not have been necessary to have alleged that he was the owner or reputed owner to sustain the indebtedness. The plaintiffs could have sworn that "the above abstract of indebtedness was just and true," and have had no reference to the ownership or to the terms of the contract, and yet his verification be absolutely truthful. Will it be contended that there could not have been an indebtedness in this case if the claimant had neglected to have described the property or have given the terms of the contract? Certainly not. Yet would not the affidavit have referred in that case specifically to the "abstract of indebtedness," etc.? If it would, how can it be said in this case to cover more than in the case supposed? It should be remembered that the rule of con-

struction, whether strict or liberal, has reference to the language of the statute, not to that used in compliance with the statute. The question here is, not what construction shall be given to the words "abstract of indebtedness," but to the word "verification," as used in the statute. We said that the word "verification" in the statute does not require an affidavit; it does not require the signature of the party to the affidavit; it does not require the word "claim" to be used; but it does require that the officer who certifies to the oath should sign the same, and attach his seal thereto; it does require the use of such plain and unmistakable language that there can be no reasonable doubt but that he is swearing to the whole claim. There can be no injustice to any one in thus holding, while any other holding would be fruitful of unnecessary litigation. If any use of language might meet the requirements of a verification, then there is no possible rule by which to determine what that language should be, except the opinion of the judge in any given case. And no one would ever be certain that the verification was proper unless the case was taken to the court of last resort. Language should be used in every case which, without labored argument or intendment, will cover the whole requirement of a verification; and such language as will the more readily and naturally apply to a part only of the requirements of the verification ought not to be made by intendment to cover more than in sound logic it is able to do. The verifications to these claims being imperfect, the judgment of the lower court was correct, and will accordingly be affirmed.

O'Brien, C. J., and Lee, J., concur. McFie, J., did not sit in this case.

Freeman, J. (dissenting).—I find myself unable to agree with the majority of the court in the conclu-

sions reached in this case. This is an appeal from a decree rendered by the district court of Sierra county, dismissing appellants' bill filed in said court to enforce a lien for work and labor performed on a certain mine of which respondent was the owner or reputed owner. The only question presented for our determination is as to the validity of the verification of the notice of the lien. The verifications in all the cases are substantially identical, so that we give one as illustrating all. It is as follows:

"TERRITORY OF NEW MEXICO, ⎱ ss.
"County of Sierra.          ⎰

"On this the twenty-seventh day of February, 1888, personally appeared before me the above named Mitchell A. Minor, and who, being by me duly sworn, on his oath states that the abstract of indebtedness mentioned and described in the foregoing notice is true and correct, and that there is still due and owing and unpaid to him from said Humming Bird mine and its owner the sum of $259.

                                "MITCHELL A. MINOR.

"Subscribed and sworn to before me this twenty-seventh day of February, 1888. ·

[NOTARIAL SEAL.]      "GEORGE A. BEEBE,
                              ·"Notary Public."

It is insisted that this verification does not meet the requirement of the statute, which after prescribing the several statements which shall be embodied in the claim, provides that the "claim must be verified," etc. Much has been written on the subject of the proper construction to be given to statutes providing for mechanics' lien. By some authorities it has been held that the statute gives preference to one creditor over another, and ought therefore to be strictly construed. By others the doctrine announced is that these statutes are remedial in their character; that they are enacted to protect a class of persons not always able to protect themselves,—parties whose labor and toil have con-

tributed materially to the value of the property sought to be charged with the lien; and that, therefore, such statutes should receive a liberal construction. Phil. Mech. Liens, sec. 16. Our own supreme court has held both of these conflicting doctrines. Hobbs. et al. v. Spiegelberg, 3 N. M. 362, and Finane et al. v. Las Vegas Hotel & Imp. Co., 3 N. M. 415. I believe the correct doctrine to be that when the controversy arises between the mechanic and the owner of mining property, or one in privity with the owner, a liberal construction should be given to the remedy; that, on the contrary, where the enforcement of the remedy must result in charging the owner of the property with a debt not contracted by him, and with a debt already paid to the contractor, then the remedy should have a strict construction. Phil. Mech. Liens, sec. 18. This case falls within the first condition named. The owner of the property, the value of which was enhanced by the labor of the appellants, resists the enforcement of their lien upon the highly technical ground that the verification alleges that the "abstract of indebtedness mentioned and described in the foregoing notice" is true, whereas the statute requires that the "claim must be verified."

It is admitted that the claims set out in the notices are substantially in accord with the statute. The notices themselves, if we except that of McCrillis, found on page 44 of the record, seem to be, not only a substantial, but a literal, compliance with the statute; and I think the notice of McCrillis, while it does not comply literally with the statute, is sufficiently specific to entitle the complainant, as against the owner of the mine, to the remedy provided by statute. The notice sets out—First, the name of the mine; second, its location; third, the name of the foreman; fourth, the time at which the work was done; fifth, the number of days, and the price per day, etc.; sixth, the

name of the owner and manager; seventh, the total amount due from the owner of the mine, "upon which nothing has been paid."

The sole purpose of the notice is to advise the owner of the mining property that the mechanic or workman looks to the property as a security for his debt, and that unless his claim is satisfied he will resort to the remedy provided by statute. The statute requires several matters to be set out in the claim, including, among others, a statement of the demand; the name of the owner or reputed owner; the name of the person by whom the claimant was employed; with a statement of the terms, time given, and conditions of his contract; also a description of the property to be charged with the lien; "which claim must be verified by the oath of himself or some other person." It is insisted that the statement in the verification under consideration, that "the abstract of indebtedness mentioned and described in the foregoing notice is true and correct, and there is still due and owing and unpaid," etc., is not a satisfaction of the requirements of the statute; that the words "abstract of indebtedness" are not the equivalent of the word "claim;" that, instead of stating that the "abstract of indebtedness mentioned and described in the foregoing notice" was true, the affiant should have stated that the "foregoing claim" is true, etc.; that the affidavit in this case may be literally true; that is to say, the abstract of indebtedness set out may be correct, and yet, by reason of some defects, the claimant may not be entitled to maintain his lien. I can not assent to this view. The debt, if it existed, grew out of the special matters set out in the notice. It required all of those to constitute a valid claim, and an affidavit that " the foregoing abstract of indebtedness is true" is the equivalent of the statement that the "foregoing claim " is true. " Claim" itself is equivalent to "abstract of indebted-

ness." It required every item contained in the notice to make up this abstract. What the claimant means by the abstract is the several matters set out in the notice, for he follows up this language with a statement as to the amount of money due him. It is insisted, however, that this is a matter of construction; that, if the affiant were on trial for perjury committed in any false statement as to matters set up in his claim, he could not be convicted, inasmuch as he has not sworn that the claim is true, but only that the "abstract of indebtedness" is true. I can not accept this construction. If any material matter set out in the notice was false, then the statement that the "foregoing abstract of indebtedness is true" was also false; or the validity of it depended upon the truth of the matters set out in the notice. Why is not the expression "the foregoing abstract of indebtedness" as comprehensive as the expression "the foregoing claim?" The statute prescribed no form for the verification. It merely provides that the "claim must be verified." How it is to be verified is left largely to the sound judgment of the claimant. The fact that this law was intended to provide a remedy for laborers and mechanics, a class of men not understood to be skilled in the use of legal forms, and that the legislature failed to provide a form for their use, is to my mind satisfactory evidence that it was not intended that the law receive a strict or technical construction. It requires no liberal use of language to suggest quite a number of forms that might be used as a verification of claims of this character. Take either of the following for example: "The foregoing claim is true;" "The statements made in the foregoing notice are true;" "Affiant is entitled to the lien by virtue of the matters set out in the foregoing notice;" and yet I doubt whether either of the examples given satisfies more fully the requirements of the statute than the language used in the case under

consideration. Mr Jones, in his work on Liens, in section 1452, says: "As to the form of verification, if the statute does not prescribe it, or the general purport of the affidavit, the better practice is to annex a declaration under oath to the effect that the facts stated are true." It has been held, however, in cases similar to this, where the purpose was to verify a claim, that no formal affidavit was necessary. The statement of the claim, followed by the informal certificate "sworn to," was held sufficient. Jones on Liens, 1452. See, also, Mr. Phillips' Work on Mechanics' Liens (section 366), wherein, treating of verification of claims, he says that the "signature of the claimant appended to his statement, and the certificate of the clerk of the court that he made oath to the accompanying affidavit, is a substantial compliance with the statute which demands that the statement shall be verified by oath;" citing Taswell v. Presbyterian Church, 46 Mo. 279. In the case of Kezartee v. Marks et al., 16 Pac. Rep. 407, decided by the supreme court of Oregon, the verification was as follows: The claimant set out the facts necessary to constitute the notice and signed the paper. Appended to this was the following:

"Subscribed and sworn to before me —————— 25, 1886.

"T. R. SHERIDAN, County Clerk."

In ruling upon the validity of this verification, the court said: "Counsel for appellant also object to these 'claims' for the reason they are not verified. Section 3673, Hill's Code, requires a claim 'to be filed with the county clerk,' 'which claim shall be verified by the oath of himself, or some other person having knowledge of the facts.' This statute does not prescribe any particular form in which such verification shall be made. No doubt the better practice would be in the form of an affidavit, to be annexed to the claim, to the effect that the facts therein stated are true; but, the

statute not having prescribed the form, we do not feel disposed to say that a claim signed by the party, and verified by his oath, is invalid. The present lien law was evidently designed to simplify the proceedings thereunder to a greater extent than any preceding statute in this state on that subject, and this form of verification may be all that the legislature designed. We therefore hold that these claims were verified."

The supreme court of Indiana, discussing the subject of mechanics' liens, in the case of Gilman et al. v. Gard, 29 Ind. 292, say: "This statute is eminently remedial, intended for the benefit and protection of subcontractors, journeymen, mechanics, and laborers, and the courts should not indulge in such niceties of construction, or such useless requirement in practice, as will tend to defeat its object, without resulting in any good end." In Tennessee it was said the lien given to mechanics should not be defeated by a too rigid construction of the statute; so that, although it is given on the condition that a "special contract with the owner of the lot of ground" is made by the mechanic or undertaker, nothing more is required than an employment and undertaking to do the work. 2 Swan (Tenn.), 313. In the case of DeWitt v. Smith, 63 Mo. 266, the notice of the lien described the house as situate on block 2. It appeared on trial, however, that the building was on lot 20. The lien was maintained on the ground that defendant owned no other property in any other part of the city, and was not, therefore, misled by this description. The statute requires that the notice shall contain "a true description of the property, or so near as to identify the same." The statute (Wag. Stat., p. 909, sec. 5) requires that there be given under oath a true description of the property. The affidavit in this case was that "the above is a true description of the building." Here the affidavit is defective, in that it does not refer to the

"property," but the "house," and it is further defective, in that it gives to the house a wrong location. In sustaining this lien the court say: "There is great reluctance to set aside a mechanic's claim merely for loose description, as the acts generally contemplate that the claimants prepare their own papers;" and again: "The courts at one time were inclined to hold that enactments for mechanics' liens were in derogation of the common law, and their provisions ought, therefore, to be construed strictly against those who sought to avail themselves of their benefits; but the better doctrine now is that these statutes are highly remedial in their nature, and should receive a liberal construction, to advance the just and beneficent objects had in view in their passings. Their great aim and purpose is to do substantial justice between the parties, and those should never be lost sight of in giving them a practical construction. * * * Had a third party purchased the property with no other notice of record, he might have been deceived by the misdescription of the block, and so it would not be notice to him. * * * As to Schell, the owner in this case, it could not be pretended that he was misled."

Applying this doctrine to the case under consideration, I ask, how is it possible to suppose that the owner of the mine was misled by this verification? Suppose the verification was defective, who is injured by it? Is it possible to suppose that the owner of the mine did not know that these laboring men were endeavoring to avail themselves of the means offered by the statute to secure a just recompense for their toil? Is he to be allowed to enjoy the fruits of their labor because, forsooth, they used two unnecessary words in their verification? In the opinion of the majority of the court, it is admitted that no particular form is necessary. "Any set of words unmistakably pointing to the whole claim will be sufficient," it is said. It is

VOL. 6 N. M.—14

admitted that the claimant need not even have used · the word "claim" in his verification; that the terms "above abstract" might have been sufficient; but it is insisted that the claimant has himself destroyed the force of his verification by the limitation placed upon it by the use of the words "of indebtedness." If he had said, "the foregoing abstract is true," his verification would have been good; but having said, "The foregoing abstract of indebtedness is true," his verification is absolutely void, and he must lose every dollar of the wages due him for labor in the mine. This construction seems to me, not only substantially, but literally, inaccurate. Let us turn again for a moment to the verification itself, and see if it bears evidence of an intention on the part of the claimant to limit his verification to the amount due. He swears to two substantive facts: First, that "the abstract of indebtedness mentioned and described in the foregoing notice is true and correct;" second, that "there is still due and owing and unpaid to him   *   *   *   the sum of," etc. It seems to me too clear for argument that the first clause of this verification is intended to embrace, and does embrace, every material allegation set out in the notice, and that the second clause is intended as a verification, and is a verification of the fact that the indebtedness still exists. The construction given by the majority eliminates entirely from the verification the first clause thereof, for, if it was the intention of the affiant to limit the verification to the "indebtedness," the second paragraph of the verification was all that was necessary. Nor am I able to concur with the majority of the court that the construction which they have given to this statute will have the effect of preventing litigation. On the contrary, it will result in promoting litigation, unless the legislature shall amend the law. Here is a statute which, without suggesting any form, declares that the claim must be

verified, and yet in construing that statute it is held that the verification is fatally defective, because it is limited by the two words "of indebtedness."

The statute prescribes no form, nor does the opinion of the majority prescribe any form. The only suggestion as to form is contained in the following language, taken from the opinion of the majority: "Language should be used in every case which, without labored argument or intendment, will cover the whole requirement of a verification." This is precisely what I insist was done in the case at bar. It seems to me that, so far from any argument being necessary to show that these miners intended to verify these claims, it requires the most refined criticism to show that they did not intend to verify their "claims," but meant only to verify the "indebtedness." The decision reached in this case exposes miners and mechanics to the very dangers from which it is assumed they ought to be protected, viz., the peril of having their liens declared void unless verified in such form and manner as will, in the opinion of the court, meet fully all the requirements of the statute. It must not be forgotten that as a rule mechanics and miners are not lawyers, and that this statute was passed, not for the benefit of lawyers, but of mechanics. I submit, therefore, that the opinion in this case, so far from aiding the mechanic, will be found to complicate his difficulties. The liens in the cases at bar are declared void, and the miners made to lose their wages, because they improperly used the two words "of indebtedness." The next attempt may be futile because it does not contain enough. How is the miner to know that he has brought himself within the rule by the "use of such plain and unmistakable language that there can be no reasonable doubt but that he is swearing to the whole claim?" I think the better rule may be stated as follows, to wit: That where it appears that the miner or mechanic has used words

which by plain intendment were designed to operate as a verification, and where it is evident that the miner or mechanic was endeavoring to secure the benefit of the statute provided for such cases, and where such statement is sworn to, it ought to be regarded as a verification, within the meaning of the statute.

For these reasons I am unable to concur in the opinion rendered by a majority of the court; but there is another consideration which, though not raised in the argument, is, in my opinion, entitled to great, if not controlling, weight. The law creating a lien in cases of this character is found in the Compiled Laws, sections 1519 to 1541, inclusive. Section 1519 defines a lien. Then follows section 1520, which declares, in substance, that every person who performs labor on any mining claim, whether such labor be performed at the instance of the owner or other person having charge of any mining, "has a lien upon the same." Section 1523 provides that this character of lien shall be preferred to any lien, mortgage, or other incumbrance which may have attached subsequent to the time when the work commenced, and preferred also to prior unrecorded liens. Then follows the section already discussed, which relates to the verification and recording of such liens. Now, it is to be observed that section 1520 creates and fixes this lien in the most unequivocal terms, without reference to any verification on record. The language of the statute is not that anyone performing the work and filing and verifying the claim shall have a lien; it does not provide even that anyone performing the work may have a lien. The language of the statute is: "Every person * * * who performs labor in any mining claim has a lien upon the same for the work and labor done or materials furnished." Independently, therefore, of the provisions of the statute making these preferred liens from the commencement of the work, independently of

what has been said in defense of a liberal construction of the law, I am satisfied that, as between the mechanic and the owner of the property, no registration of the lien is necessary. As between the parties themselves, what is the necessity for recording the lien? I know of no instance in which, as between the parties themselves, it is necessary to the validity of an instrument that it be recorded. What is the purpose, and the only purpose, of recording an instrument? It is, of course, to give notice to strangers. But this is not all; for it is to be observed that, in cases of this character, it is not the contract of the parties, but the statute, that creates the lien. The contract of the parties, which may be oral or written or implied, creates the obligation, but the statute fixes the lien. The whole of section 1524 is devoted to the purpose of prescribing the mode by which such liens may be good as against third parties, and has no reference, as between the parties themselves, to the creation of the lien. The context also shows that the law contemplates unrecorded as well as recorded liens, i. e., shows that it is not necessary to the existence of the lien that it be recorded. To illustrate: Section 1540 provides that "whenever any lien, recorded, has been paid or discharged," etc. So, also, section 1541 provides that "all liens shall take effect as to the different persons who have liens from the time of filing the same for record." If to perfect the lien, as against the owner of the property, it is necessary to record it, why use the words I have emphasized? Why not have said, "All liens shall take effect from the time of filing the same?" Under the familiar rule, that expressio unius est exclusio alterius, the omission to mention the owner as a party against whom the lien is to take effect only upon registration is itself a legislative construction of the act. I am therefore clearly of the opinion that, in order to entitle themselves to main-

tain this action, it was not necessary for the appellants
to give any public notice or to verify or record the
claims. Section 1520 creates the lien, and section
1524 prescribes the mode by which such lien may
become notice to the world, and bind the property, as
against a subsequent incumbrance.