194 P.2d 266

ERB v. HAWKS.

No. 5065.

Supreme Court of New Mexico.

June 2, 1948.

H. E. Blattman, of Las Vegas, for appellant.

Noble & Spiess, of Las Vegas, for appellee.

BRICE, Chief Justice.

The plaintiff (appellee), a real estate broker, recovered a judgment against defendant (appellant) for $2325.00 for services (as it is alleged) in securing a purchaser for defendant's ranch.

It is admitted by the answer and found as facts by the trial court that plaintiff was a real estate broker doing business in Las Vegas, New Mexico; that he was employed by defendant on the 10th day of January 1945 to procure a purchaser for defendant's ranch; and that defendant agreed to pay plaintiff five percent of the selling price of the ranch as commission if he succeeded in securing such purchaser; and that defendant sold the ranch to one Walter Young of San Angelo, Texas, for $46,500.00.

The trial court further found as facts that plaintiff procured Young as a prospective purchaser, showed him a portion of the ranch, and placed him in contact with defendant, after notifying defendant that he had shown Young the ranch, and that he was placing Young in contact with defendant for further negotiations; that plaintiff was the procuring cause of the sale of defendant's ranch to Young, and that plaintiff was entitled to recover $2325.-00 for which judgment was entered.

There are a number of assignments of error, but the only point presented here—a determination of which will be decisive of the issues—is whether there is substantial evidence to support the trial court's finding that plaintiff was the procuring cause of the sale to Young. Stacey v. Whalen, 33 N.M. 577, 273 P. 761.

In determining this question we must search the record for substantial evidence to support the finding, and if we find that it is supported by such evidence

the judgment should not be disturbed, otherwise the case should be reversed. There is practically no conflict in the testimony. The witnesses were fair, and we have no doubt testified honestly and correctly as to the facts.

The substance of the testimony on the question follows: The plaintiff testified that Walter Young was sent to him by C. O. Walling, a Texas real estate broker, as a prospect for the purchase of a New Mexico ranch. He showed the property to Young, and after some negotiations he gave Young a letter of introduction to defendant, and sent defendant the following telegram:

"Showed Walter Young of San Angelo Ojitos Frios. He will contact you in Colorado Springs."

Plaintiff stated in the letter (which defendant denied having received) that Young expressed a desire to talk to the owner and that the writer referred him to defendant "for further instruction concerning the matter of the ranch." These negotiations began March 10, 1945. Plaintiff saw Young in Las Vegas in June 1945, and Young made an offer to lease the ranch if given an option to buy at $5 an acre. The defendant refused the offer, and plaintiff made no further attempt to sell to Young, though he saw him several times thereafter. He did not communicate with defendant, because he and Young had "quit negotiating" with him. He tried to sell the ranch to other prospects.

C. O. Walling, the Texas broker who sent Young to plaintiff, testified: In February 1946 he came with Young to Southern Colorado with a view of selling him a ranch, and showed him several ranches. At one time Young stated, "Mr. Walling I like your New Mexico holding better, the 10,300 acres ranch near Las Vegas." He referred to the defendant's ranch. At various times during their inspection tours Young discussed the defendant's ranch. He stated that he had been interested in it since he had inspected it with the plaintiff. After inspecting some Colorado ranches they went to Colorado Springs. Young stated he would contact other real estate brokers, and when he was through inspecting he was going to see the 10,300 acre ranch near Las Vegas that plaintiff had shown him. Mr. Walling then left Young at Colorado Springs.

The defendant testified substantially as follows: He had listed his ranch for sale with several brokers, among them the plaintiff and Mr. Haigler of Colorado Springs. Young communicated with him over the telephone, and did not present plaintiff's letter of introduction. He made no definite offer except the offer to lease, made through plaintiff. He saw plaintiff in Las Vegas June 4, 1945 and he said nothing about Young still being interested in buying the ranch, and he did not under-

stand that plaintiff was still trying to sell to him. He was in Las Vegas and Mr. Haigler called him from Colorado Springs and told him that he had Young as a customer, and could sell the ranch to him. It was this call and the efforts of Mr. Haigler that brought about the sale. He received no offer from Young, or from Mr. Erb or Mr. Walling in Young's behalf, offering to buy the property. He knew Young was the same man that plaintiff had shown the ranch to. He never saw plaintiff while closing the sale with Young in Las Vegas.

W. A. Haigler testified that the ranch in question was listed with him for sale in 1935. He met Young in January 1946 at his office in Colorado Springs. He showed him five Colorado ranches. Young stated he was not interested in them but was interested in New Mexico ranches. He told Young of the plaintiff's ranch and he asked if it was the Ojitos Frios ranch, and was told that it was. He said Mr. Erb had taken him to the improvements, and that he had visited the ranch alone. He called defendant who was in Las Vegas and told him he had Young as a prospect for the purchase of the ranch. He took Young to Las Vegas, conducted him over the ranch and closed the trade between the parties. On the way down Young told him of his dealing with the plaintiff, and asked him what would be the plaintiff's status in the deal. He told Young that he was deal-

ing with an honorable man (referring to defendant), and if plaintiff had any claim he need have no concern, if such claim was justified. He did not say to Young that plaintiff would get a commission.

The following letters passed between the parties:

Defendant to plaintiff, dated March 17, 1945:

"I have heard nothing from your San Angelo man since I talked to you over the phone Thursday morning, so evidently he was not very anxious to buy a ranch. When I talked with him on Wednesday evening I made him a special price to be accepted or rejected right then, and he wanted me to come down there before he would make a statement as he said he wanted to know where the lines were and what the taxes amounted to. I could see no reason to spend $50.00 and two or three days time without having something more definite to work on. * * *"

Defendant to plaintiff, dated March 28, 1945:

"The other day when you wrote to me about Mr. Reynolds going out to Ojitos Frios you also wrote that you had heard nothing further from Mr. Young. At that time and since then I have thought of writing to you to ask if you saw Mr. Young the morning we had our talk over the phone, or if you went to the hotel and left

a message for him. "When I talked with Mr. Young over the phone I had told him that I would get in touch with him. He wanted me to come down there but I did not want to go unless he made me a definite offer on the ranch, however I did tell him that I would let him hear from me the next day. Then I tried for some time to reach you by phone but discovered that you had no phone where you lived, and so called you the next morning. If you did not see Mr. Young or if he did not get your message, then I should drop him a line.

\*    \*    \*    \*    \*    \*

"Let me hear from you if you get a renter or buyer prospect."

Plaintiff to defendant, dated June 2, 1945:

"Mr. Walter Young, of San Angelo, Texas, was in our office this afternoon and requested me to submit the following offer on the Ojitos Frios Ranch to you, as follows: He will take the ranch on a two year lease at $1,800.00 per year with an option to buy at the expiration of the two years for $5.00 per acre. \* \* \* Should this offer be acceptable to you, he is desirous of adjusting matters regarding the ranch and would like to meet you in Las Vegas and draw up an agreement on or about June 15th. \* \* \*

"Harold, please advise if you will be able to meet Mr. Young, so that I in turn may advise him to be here. \* \* \*"

Defendant to plaintiff, dated June 4, 1945:

"\* \* \* I cannot consider the offer which Mr. Young made to you on the terms mentioned in your letter. "When I talked with your party in Springer he seemed to be a likely prospect and I wonder if you followed it up, whether you sell him my place or some other ranch. I feel that my price of $5.25 per acre is a reasonable price, as we paid $5.00 per acre for the unimproved land on considerable of the ranch, before the new house was built."

Plaintiff to defendant, dated September 30, 1945:

"Harold, before taking the matter up further with Mr. Lagae or other prospective buyers, please be assured of our desire and willingness to co-operate in every detail with you on the sale of your property, and to carry out your wishes in such matters, if possible.

"However, before proceeding further I would be pleased to have you inform me if you wish to have the undersigned continue in his efforts to contact a prospective buyer with the idea in view of culminating a sale of the Ojitos Frios Ranch. Also, if it is your desire that this Agency list your property, that you outline and clearly define the terms under which you will sell.

"Trusting you will be disposed to informing us completely on the above mentioned matters, with kindest regards, etc."

Defendant to plaintiff, dated September 28, 1945:

" * * * To outline and clearly define the terms under which I will sell the ranch at this time would necessitate notifying anyone to whom such an open offer might be made, whether or not any inquiries were received, in the event of any decision to make any change in terms. It seems to me that it is better to have offers of purchase made by prospective buyer, as I have previously done."

The plaintiff testified that the defendant told him to ask $5.25 per acre for the ranch of 10,300 acres, but that he would sell for $5.00 per acre, or $51,500.00; but he never secured an offer from Young.

■ The question is not what inferences or conclusions this court, or the writer of this opinion, would have reached from the evidence quoted, but whether there is to be found substantial evidence to support the questioned finding, viewing the situation and testimony in the aspect most favorable to the plaintiff. Valdez v. Salazar, 45 N.M. 1, 107 P.2d 862; City of Roswell v. Hall, 45 N.M. 116, 112 P.2d 505; Holton v. Shepard, 291 Mass. 513, 197 N. E. 460. So viewing the testimony, the facts from which an inference of who was the procuring cause must be drawn, are substantially as follows:

■ The plaintiff secured a customer (Mr. Young) from the state of Texas, in March 1945, and interested him as a prospective purchaser of the defendant's ranch. He took Mr. Young to the ranch headquarters. They had a general view of the ranch on the way out. Later Young went out alone and presumably looked over the ranch to his satisfaction. A second time the plaintiff attempted to sell to Young, but only secured an offer to lease with an option to buy, which defendant refused. After the plaintiff showed the ranch to Young the first time, he notified the defendant of his efforts and put Young in contact with him, which resulted in a proposition at a specific price from defendant to Young, the amount of which is not stated. Young did not turn this proposition down but insisted upon the defendant coming down from his home in Colorado Springs to Las Vegas to negotiate with him. This the defendant refused to do; but notified plaintiff of the circumstances, and suggested that he contact Young again, which plaintiff attempted to do but failed to find him. After Young's offer in June to lease with an option to buy, the plaintiff made no further effort to sell the property to Young for the reason, as stated by him, that the parties insisted upon negotiating themselves. The next we hear of Young, he was being

shown ranches in Colorado by Walling, the broker who had sent Young to plaintiff. He declined to buy any of the property shown him in Colorado by Walling, but stated to him that he was still interested in the Ojitos Frios Ranch in New Mexico, and that after he was through looking in Colorado he would go back to see that ranch again. He went to see the broker Haigler in Colorado Springs just after leaving Walling. Haigler showed Young five Colorado ranches; after which Young told Haigler he was not interested in Colorado ranches, that he was interested in "New Mexico ranches." There is nothing in the evidence to indicate that Young was interested in any other ranch than the Ojitos Frios. At any rate, when Haigler told him he had a New Mexico ranch listed, he immediately asked if it was the Ojitos Frios ranch, and was told that it was.

He became concerned over the fact that this ranch had been shown to him by plaintiff and asked what would be the plaintiff's status in the deal. Haigler's statement to him to the effect that he was dealing with an honorable man (referring to defendant) and that if plaintiff had any claim that he need have no concern, was undoubtedly meant to satisfy Young that if plaintiff was entitled to a commission it would be paid to him. It indicated that Young had in mind the fact that he had become interested in this property through the plaintiff and that his interest in it had continued to that time.

It was a reasonable inference that if Young had not contacted Haigler he would have gone back to Las Vegas and closed the trade with defendant, or through plaintiff. In other words, it was not the effort of Haigler that brought about the sale, but the chain of events set in motion by plaintiff in showing the land to Young, that continued without a break in continuity and interest that brought it about.

Some questions are raised as to whether the listing with plaintiff had not been cancelled, or whether all negotiations with Young had not been abandoned. These are questions of defense that were not pleaded, nor are they raised by assignment of error. We stated in Jackson v. Brower, 22 N.M. 615, 167 P. 6, 7:

"The law is well settled that the agent is the procuring cause when the sale is traced to his introduction of the purchaser to the owner or principal. Tested by this rule, we believe the above facts show that appellee was the procuring cause of the trade in question, for he introduced his principal to the agent of the owner of the lands in Texas with whom the trade was made. We can see no reason for a distinction between the introduction of

the principal to the owner or to the agent of the owner. Here McClure was a broker employed by Trigg and many other people to sell and trade lands for them. Jackson introduced appellant to McClure, and it was by virtue of this introduction, and the efforts of Jackson, that the trade was made. The fact that Jackson was not present and had nothing to do with the trade, further than bringing the parties together, is of no moment."

See Stout v. Bartlett, 52 N.M. 100, 192 P.2d 311; Schwabe v. Kemp & Coldwell, Tex.Civ.App., 20 S.W.2d 273.

It is a reasonable inference that the listing of the property was not cancelled by the letters between the parties regarding a new listing. While ten months was a long time in which to close the sale, we are not able to say that the trial court's conclusion is not supported by substantial evidence.

On this question we stated in Jackson v. Brower, supra:

"There was no error in refusing to give defendant's requested instruction No. 5, as the claimed revocation of the contract of employment by the elapse of time was not pleaded by the defendant and was not an issue. An affirmative defense, to be proved, must be pleaded (Kelly v. Stone, 94 Iowa

316, 62 N.W. 842; Scott v. Dillon, 58 Misc. 522, 109 N.Y.S. 877); and where a broker finds a purchaser at the seller's terms, while still employed, the reasonableness of the time which he has taken is immaterial (Moore v. Boehm, 45 Misc. 622, 91 N.Y.S. 125). Further, in an action for broker's commission, an alleged abandonment of the brokers' employment to sell is a matter of defense, which plaintiff is not bound to negative. Moore v. Boehm, supra. The case of Moore v. Boehm is very much in point on this question. It was a case where the employment was admitted and the issue was whether the employment had been terminated by notice. The defendant's request to submit to the jury the question whether plaintiff had procured a purchaser within a reasonable time was refused. The evidence showed that plaintiff had procured a purchaser at the terms fixed some six months after his employment. The appellate court held that there was no error in the ruling, announced the principles already set out * * *."

The following authorities bear upon the question: Williams v. Engler, 46 N.M. 454, 131 P.2d 267; Wilson v. Sewell, 50 N.M. 121, 171 P.2d 647; Millage v. Irwin, 68 Colo. 188, 187 P. 525; Grinnell Co. v. Simpson, 64 Wash. 564, 117 P. 391; Sessions v. Pacific Improvement Co., 57 Cal. App. 1, 206 P. 653; Owens v. Mountain States T. & T. Co., 50 Wyo. 331, 63 P.2d

1006; Arnett v. Scherer, 142 Or. 494, 20 P.2d 803.

The judgment of the district court should be, and is, affirmed.

It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.