442 P.2d 792

**Julie POWERS and David Powers,
Plaintiffs-Appellants,
v.
Esther CAMPBELL, as Administratrix of the
Estate of Otis Campbell, Deceased,
Defendant-Appellee.
No. 8457.**

Supreme Court of New Mexico.
July 8, 1968.

Eugene E. Klecan, William H. Carpenter, Albuquerque, for plaintiffs-appellants.

Irving E. Moore, Albuquerque, for defendant-appellee.

OPINION

COMPTON, Justice.

Plaintiffs brought this action against Otis Campbell to recover damages for in-

juries sustained in an automobile accident. Campbell has since died of causes unrelated to the accident, and Esther Campbell, as administratrix of his estate, was substituted as a defendant. The issues were tried without a jury, and the court awarded Julie Powers $3,250.00 for personal injuries, and David Powers $750.00 for hospital expenses and property damages. The plaintiffs, feeling aggrieved, appeal the sufficiency of the awards.

The appellants first contend that the trial court erred in awarding inadequate damages to the appellant, Julie Powers, for pain and suffering and impairment of earning capacity. In this regard the appellants do not attack the findings of the court but instead urge that the facts require the court to make greater awards.

In view of the unusual claim, we review at length the evidence regarding personal injuries sustained by Julie Powers. On February 28, 1964, an automobile driven by Otis Campbell collided with an automobile driven by Mrs. Powers. It was observed at the scene of the accident that Mrs. Powers was suffering from lacerations. She was taken by ambulance to a hospital where she was examined by Dr. Frank Trinosky, the physician under whose care she had previously placed herself for pregnancy. Dr. Trinosky noted at the time that she also complained of abdominal pains, but released her from the hospital. The pregnancy at that time was in its eighth month and had thus far progressed normally and healthfully.

On March 2, 1964, Dr. Trinosky again examined Mrs. Powers. She then complained of generalized neck pain, headaches, and tenderness over her cervical spine. At that time Dr. Trinosky discovered a contusion on the lower part of Mrs. Powers' abdomen and he prescribed rest. On March 3, 1964, Mrs. Powers was admitted to the hospital. She was experiencing a considerable amount of vaginal bleeding. After consulting a specialist in obstetrics and gynecology, Dr. Trinosky decided to augment labor because of fear of hemorrhaging. Several hours later on that same day Mrs. Powers experienced, in the words of Dr. Trinosky, "an uneventful delivery of a four pound four ounce viable male." Speaking in terms of reasonable medical probabilities, Dr. Trinosky attributed the premature delivery to the trauma Mrs. Powers sustained in the automobile accident.

Probably as a result of the premature birth, the baby had respiratory problems which required certain specialized treatment for the first few days of life. Mrs. Powers was released from the hospital on March 7, 1964. The length of Mrs. Powers' stay in the hospital was within the normal range of uneventful delivery; but the baby remained in the hospital longer than that expected in normal, full-term deliveries. According to Dr. Trinosky the baby progressed so well after leaving the hospital that no treatments or examinations were required which would not have been necessitated for a full-term baby.

Mrs. Powers again visited Dr. Trinosky on July 6, 1964, complaining that she had suffered headaches and neck pains for two months. Dr. Trinosky then administered a foramenal compression test, and X-rays of the cervical spine were taken. The X-rays showed no abnormalities, but Dr. Trinosky prescribed medication to ease pain. Mrs. Powers visited Dr. Trinosky the last time on July 11, 1964.

On October 6, 1964, Mrs. Powers visited Dr. Lloyd Hurley, an orthopedist, and complained basically of the same symptoms she had related to Dr. Trinosky in July of that year. Based on the patient's description of the pain, the patient's history, and his own examination, Dr. Hurley explained the persistent symptoms as "residual myositis and fibrositis, subsequent to an acute sprain of the neck" and connected the neck sprain to the automobile accident. Dr. Hurley advised Mrs. Powers to avoid activities which would require holding her head in one position too long, and prescribed medication for relief of muscle spasm and muscle soreness. During the

period of approximately two years from the time of her first visit to Dr. Hurly until the time of trial, Mrs. Powers' symptoms persisted in a somewhat sporadic manner and she consulted Dr. Hurley several times. The doctor's original diagnosis remained unaltered until February and March 1966, when Mrs. Powers was admitted to the hospital for surgery unrelated to the accident. Dr. Hurley took advantage of that opportunity to get a second set of X-rays of Mrs. Powers' cervical spine and to have Dr. Seelinger, a neurologist, take an electromyogram, a test which can aid in discovery of abnormalities in the cervical spine. After analysis of the electromyogram results, Dr. Hurley and Dr. Seelinger agreed that there was an abnormality at a certain level of the cervical spine. Dr. Hurley, taking into account the patient's medical history, diagnosed the abnormality as a nerve root injury and linked it to the automobile accident of 1964. Dr. Hurley's prognosis was that the injury was of a permanent nature but that the seriousness of the injury could not be determined by the condition of the patient at that time. Dr. Hurley testified that he believed Mrs. Powers could carry on as a full-time stenographer and typist, but that such work would likely cause "spells of headache and soreness of the muscles of her neck, and she may even miss some time from work because of this." Dr. Hurley's diagnosis and prognosis were basically in accord with those of Dr. Eugene Szerlip, an orthopedist, who had examined Mrs. Powers twice in the months preceding trial at the request of her attorney.

Mrs. Powers was employed at the time as a typist and stenographer with A.C.F. Industries and February 28, 1964, the date of the accident, was to have been her final day of work. For a nine-month period in 1965 Mrs. Powers was employed as a typist and stenographer by National Gypsum Company. During this time she missed no work on account of the symptoms described above. This employment was terminated when National Gypsum moved its Albuquerque offices to Denver. In the Spring of 1966, Mrs. Powers applied for a job with Sandia Corporation but was, in the words of the Sandia Corporation physician, who examined her, "rejected temporarily * * * because she was still under the care of a physician, because of her report from Dr. Hurley, and also that there was a pending suit and the corporation does not wish to get involved."

The guideline for setting aside awards of trial courts is set out in Hammond v. Blackwell, 77 N.M. 209, 421 P.2d 124, which states:

"* * * An [alleged] inadequate award will not be disturbed on appeal unless it appears to have resulted from passion, prejudice, partiality, undue influence or some corrupt cause or motive, where there has been palpable error or the measure of damage has been mistaken."

It has long been recognized that in awarding damages for pain and suffering or permanent injury to health there cannot be any fixed measure of compensation. The amount of awards necessarily rests with the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation, and, in the final analysis, each case must be decided on its own facts and circumstances. Compare Terrel v. Lowdermilk, 74 N.M. 135, 391 P. 2d 419; Montgomery v. Vigil, 65 N.M. 107, 332 P.2d 1023. Also see Steamship City of Panama, 101 U.S. 453, 25 L.Ed. 1061; Illinois Cent. R.R. Co. v. Barron, 72 U.S. (5 Wall.) 90, 18 L.Ed. 591; Imperial Oil, Ltd. v. Drlik, 234 F.2d 4 (6th Cir. 1956). Where the court's findings are supported by substantial evidence, as here, we will not substitute our judgment for that of the trier of the facts.

The appellant, David Powers, contends that the court erred in deducting from the award to him an amount equivalent to the expenses incurred for a normal delivery. He argues that since there was no normal delivery, deduction of expenses that would have been incurred in a normal delivery is mere speculation. Such argu-

ment is unfounded. Mrs. Powers had given birth to a child previously, and that child likewise was delivered by a physician in a hospital. It is not mere speculation to assume that, had the delivery of their second child been normal, the Powers would have sought similar medical care, as the evidence is uncontradicted that prior to the accident Dr. Trinosky had already been retained for the delivery. Fink v. Dixon, 46 Wash.2d 794, 285 P.2d 557.

Appellants further contend that the court erred in denying certain requested findings of fact requested by them. There was no error in this respect; the findings requested are contrary to findings made by the court based upon conflicting evidence.

The judgment should be affirmed. It is so ordered.

NOBLE and MOISE, JJ., concur.