# CHARLESTON.

## STATE *v.* CARR.

<table>
<tr><td>65</td><td>81</td></tr>
<tr><td>f66</td><td>630</td></tr>
</table>

Submitted September 4, 1908. Decided February 2, 1909.

1. CRIMINAL LAW—*Opinion Evidence.*

Opinions of non-expert witnesses in a murder case, as to whether the slain man was dead at a particular moment, and the wound was sufficiently near the heart to injure it, are admissible evidence. (p. 82.)

2. WITNESSES—*Cross-Examination.*

Cross-examination of a witness, to develop the fact that he had manifested partiality or friendship for the prisoner, by attempting to influence a witness for the state in his favor, is proper. (p. 83.)

3. SAME.

It is not error to refuse to permit questions to be asked, on cross-examination, for the purpose of developing facts, in respect to which the witness had not testified on his examination in chief, nor to strike out evidence so elicited. To prove such facts, the witness should be introduced as the witness of the party desiring such testimony, and, having failed to do so, after the court has refused to let him adduce it by a cross-examination, he is deemed to have waived it and cannot be heard to complain. (p. 83.)

4. CRIMINAL LAW—*Appeal—Exclusion of Evidence.*

In order to make exclusion of offered evidence available as a ground of error in the appellate court, the record must be so prepared in the court below as to show what the excluded evidence was. There is no presumption as to what answer a witness would have made to a question propounded. (p. 85.)

5.  WITNESSES—*Examination—Leading Questions.*

Hostility or reluctance of a witness to disclose what he knows, justifies the court, exercising sound discretion, in relaxing the rule against the propounding of leading questions; since, in such case, the substantial reason for the rule itself does not exist. (p. 84.)

Appeal from Circuit Court, Randolph County.

Martin V. Carr was convicted of murder, and brings error.

*Affirmed.*

L. HANSFORD, for plaintiff in error.

WM. G. CONLEY, Attorney General, for the State.

POFFENBARGER, JUDGE:

Howard Richards was fatally shot, while walking along a railroad track in Randolph county. Only one person claims to have seen the tragedy, namely, Bertha White, who says she was walking with him at the time, and was, within a few minutes before the shooting, seen by others, going with him in the direction of the scene of the homicide. Martin V. Carr was charged with the murder of Richards, convicted and sentenced to life imprisonment. No instructions were given or requested. The errors, assigned on the writ of error, relate to the admission and exclusion of evidence and motions for a new trial, predicated on after discovered evidence, and the view that the verdict is contrary to the evidence.

Over the objection of the prisoner, Bertha White was permitted to testify to the appearance of the deceased and her opinion as to his physical condition immediately after he was shot; Samuel Collins as to whether the wound was sufficiently near the heart to injure it; and Frank Miller, on cross-examination, to having talked with the witness Bertha White about the case before the trial. All of this testimony was obviously admissible, and, besides, the objections were captious. The death of Richards and the cause of his death were made fully apparent by other testimony and were incontrovertible facts in the case. The opinions of these witnesses were clearly admissible under the decision in *State* v. *Welch,* 36 W. Va. 690, *Commonwealth* v. *Sturtevant,* 117 Mass. 122, and others; but, if they had not been, their admission would have been clearly harmless, under the circumstances. The testimony elicited

from Miller on cross-examination was proper, the object being to affect his credibility, by showing activity on his part in favor of the prisoner.

The court sustained objections to certain questions propounded to witnesses for the state on cross-examination, and exceptions were taken. Bertha White was questioned as to who was with her the day before the shooting. Samuel Pennington was asked whether Howard Richards, the slain man, was the same person who had previously been sent to the penitentiary from Tucker county. The court, sustaining an objection, struck out an answer of the same witness, substantially stating that a search by him for tracks around the tree from behind which Bertha White had said the prisoner had stepped, at the time of the shooting, had not disclosed any. The first two of these questions related to immaterial matters. The subject matter of the last one was material, but the question was asked at an improper time. The witness had not said anything about the tree or the tracks in his examination in chief. The rules of practice justified the court in refusing to admit the testimony at that time. The witness should have been afterwards called by the prisoner as his own witness and asked to give this testimony. *State* v. *Hatfield,* 48 W. Va. 561. Had the court then excluded it, an exception could have been taken. While this is a mere rule of practice which the court, in its discretion, may vary or relax, it is not perceived that ordinarily a court can be held to have abused its discretion by adhering to its own rules. This witness was afterwards put on the stand by the prisoner and could and would no doubt have given this testimony, if he had been asked to do so. That it is not in the case, therefore, is more clearly the fault of the prisoner than that of the court. Technically, the court was not in fault at all, but the prisoner was. We know of no principle or precedent by which he can be relieved from the consequences of his own conduct or even mistake about a matter of this kind. The ground of the objection was no doubt stated and brought to the attention of his attorney, and, then, having later called the witness himself, he failed to take this evidence from him. He could waive this evidence, though relevant and material, and seems to have done so. *McManus* v. *Mason,* 43 W. Va. 196. Another exception, predicated on the refusal of the court to let

this witness make a certain statement about the nature of the ground around the tree, must be disposed of on the same principle. It, however, was really not material.

One Bradshaw, a saloonist, was introduced by the state to prove that, in his saloon, on the day before the killing, the prisoner and relatives of his were together and engaged in a conversation, in the course of which some one, the prisoner, as the witness thought, had said he was going to kill a man before the next evening. His responses to a great many questions were decidedly evasive, and he seemed to be averse to telling what he knew. But the attorney for the state had not been as observant of the rules as he should have been. His first question was leading, but was not objected to. Others of the same kind followed, without objection. Finally after the hostility or reluctance of the witness had been fully disclosed, objections to leading questions were made and the court overruled them. After having made it plain that no person had been named as the intended victim, nor any means of inflicting death indicated, the witness stated what had been said. Taken in connection with the other evidence in the case, this was clearly relevant and material, and, in view of the adverseness of the witness, we think the court did not abuse its discretion in overruling the objection. When a witness is hostile, the reason for the inhibition of leading questions fails and the court may, in the exercise of sound discretion, suspend the rule. *St. Clair* v. *United States,* 154 U. S. 134; 8 Ency. Pl. & Pr. 86; *Bastin* v. *Carew,* R. & M. 127; 1 Greenleaf Ev. (12th Ed). 444.

A further complaint is founded on the exclusion of evidence to the effect that the prosecuting witnesses had been staying with Howard Richards and his brother, Ben Richards. The relevancy and materiality of this evidence does not appear. There seems to be an intimation in some of the questions propounded, of belief, on the part of the defense, that Richards was killed by his brother Ben, because of rivalry or jealousy between them, growing out of their relations with the prosecuting witness; but it is not supported by any evidence, tending in an appreciable degree to prove it. Nobody saw Ben Richards near the scene of the killing on that day, nor was there any evidence to that effect offered. The prosecuting

witness was asked if they had not quarreled on the preceding day, and threatened each other with pistols, but she denied it and there was no attempt to prove it.  The step-mother of Bertha White was permitted to say she, Bertha, had been living in the woods.  Unless aided by something tending to connect Ben Richards with the act of killing, or show a motive for so doing, the fact that she lived in the woods with the two Richard brothers casts no light on the inquiry and is immaterial. Bertha White, on cross-examination, had denied having told her step-mother she did not know who had shot Richards, and it appears from the admitted evidence of Mrs. White that, if permitted, she would have testified to a conversation between herself and Bertha on that subject, but it does not appear what her testimony would have been as to what Bertha had said. She attempted to tell something, but was not allowed to proceed far enough to disclose it, and the attorney did not state what he wanted to prove by her.  Not to have done so was a grave oversight and it may be that the prisoner has been seriously prejudiced by it, but we cannot say he has been.  The record fails to disclose what it should have been made to show.  If we could see that Mrs. White would have said the witness had told her Ben Richards had done the shooting or she did not know who had done it, the impeachment of the only direct testimony on which the verdict stands would have been strong, and we might reverse the judgment for the court's refusal to admit it.  No sufficient record was made to bring up this exception and consideration thereof is barred by a well settled rule.  *State* v. *Clifford,* 59 W. Va. 1.

The alleged newly discovered evidence consists of an affidavit of L. L. Dayton to the effect that he had heard Wait Richards say he intended to kill Howard and Ben with a 303 Savage Rifle, if they did not quit running with the White girl, and a statement of Mrs. Sarah C. White, who had already testified in the case to all relevant matter shown by her statement. Nothing was offered by way of excuse for not having discovered these facts before the trial.  This alone is fatal to the application for a new trial on the ground of after discovered evidence.

On the evidence, we think the case was for the jury.  For some reason, a bear trap had been set in a path on the premises of the prisoner near the railroad and obscured from view by a

covering of brush and leaves. The deceased, for some purpose, went from the railroad on to the adjacent premises and stepped into the trap which closed on the heel of his shoe. Being unable to release it from the trap, he unlaced the shoe and withdrew his foot from it. While engaged in this, or immediately after the accomplishment of it, according to the testimony of Bertha White, Richards was fired upon by the prisoner from behind a tree and killed. Another witness who was some distance from the place of the killing, testified to having heard the reports, and seen the smoke of the gun. He was not close enough to enable him to ascertain the cause of the shooting nor did he agree with the witness White as to the tree from behind which it was done. The theory of the state was that the prisoner, suspecting theft from his truck patch by the deceased, set the bear trap to catch and hold him until he could put him to death. He owned such a trap. The lot in which the trap was set seems to have been a sort of truck patch, from which thefts had occurred or were suspected to have occurred. The killing took place very near the prisoner's house, and, while the entire neighborhood seemed excited over the horror, he manifested no interest in it. When the deceased passed him, very shortly before the killing, he had a gun in his hands. The crowd, with whom he then was, immediately dispersed and none who had been with him, just before the killing, are able to say where he was at that moment. A man by the name of Miller says he and Carr were together at a place some distance from the scene of the homicide and heard the shots, but, as between him and Carr, on the one side, and Bertha White on the other, it is a case of directly conflicting evidence, peculiarly appropriate for jury determination, and beyond the province of the courts.

Seeing no error in the judgment, we affirm it.

*Affirmed.*