# CHARLESTON.

LAMBERT v. ARMENTROUT.

Submitted September 4, 1908.    Decided March 23, 1909.

1. WITNESSES—*Cross Examination—Impeaching One's Own Witness.*

   Cross-examination is confined to matters of the examination in chief. If a party wishes by his adversary's witness to prove other matters, he must wait his turn, or, in the court's discretion, may without waiting his turn interrogate the witness; but in either case he makes the witness his own as to such other matters. (p. 376.)

2. SAME—*Impeaching One's Own Witness—Contradictory Statements.*

   A party may not impeach his own witness either by attacking his reputation for veracity or by proving by others previous contradictory statements. But if the witness is a party in interest, so that such statements would be admissible as admissions against his interest, the party may prove such prior admissions, though they may contradict the witness. (p. 378.)

3. SALES—*Implied Warranty.*

   There is no implied warranty of quality or soundness of chattels sold. There must be either fraudulent representation or express warranty of quality, soundness or fitness. (p. 378.)

Appeal from Circuit Court, Randolph County.

Action by L. D. Lambert against C. L. Armentrout and others. Judgment for plaintiff, and defendants appeal.

*Reversed.*

L. HANSFORD and CUNNINGHAM & STALLINGS, for plaintiffs in error.

J. WM. HARMON, for defendant in error.

BRANNON, JUDGE:

C. L. Armentrout and C. S. Armentrout made a promissory note to R. E. Lee Armentrout, which R. E. Lee Armentrout assigned to L. D. Lambert, and Lambert sued on it before a justice making C. L. Armentrout, C. S. Armentrout and R. E. Lee Armentrout defendants. The case went to the circuit court of Randolph county by appeal, and there the court directed a

verdict for the plaintiff, and from judgment against the three Armentrouts C. L. and C. S. Armentrout have come to this Court.

The defence was that the note had been given for a horse and wagon, and that the horse had been warranted as sound, but in fact was unsound. On the trial the plaintiff introduced R. E. Lee Armentrout as a witness, who gave evidence in chief that the note had been given for a horse and wagon, and that forty dollars the price of the wagon had been paid, and no more, and gave no evidence at all touching the warranty or soundness of the horse. On cross-examination the defence asked him if he had not warranted the soundness of the horse, and he denied having done so. The defence also asked whether he had not made statements out of court that he knew the horse was unsound, and had warranted him as sound, and he denied having made such statements. Then the defence offered to prove by other witnesses that Armentrout had made such contradictory statements; but the court would not allow evidence of such statements.

The great weight of authority is that a party has no right to cross-examine a witness beyond facts elicited on his examination in chief. He cannot prove his own case by his adversary's witness, without making him his own witness as to such new independent matter. If he wishes to prove other matters by him, he must call him in the subsequent progress of the case; and if without waiting his turn, which the court, to avoid confusion and promote method and regularity, should require, he at once interrogates, he makes the witness his own. *State* v. *Hatfield,* 48 W. Va. 561; *State* v. *Carr,* (decided February 1909) ; 3 Jones on Ev., sec. 820, n. 6; 2 Elliott on Ev., secs. 917, 922. So, the defence in this case made Armentrout its own witness touching contradictory, out-of-court statements as to warranty of the horse. This being so then comes the question whether the defendants could impeach Armentrout by proof from other witnesses of what he denied, that is, that he made statements that he knew the horse was unsound and had stated he was sound when he sold him. I do not know that this Court has passed on this question. A party cannot impeach his own witness by evidence of other witnesses, either as to general reputation for

veracity or of previous inconsistent statements. McKelvy on
Ev. 400; 2 Elliott on Ev., sec. 985; 30 Am. & Eng. Ency. L.
1128; 3 Jones on Ev., sec. 857; Underhill on Ev., sec. 347. And
it makes no difference that the adverse party first called the wit-
ness, since by cross-examination on matters other than those
included in his chief examination, the party makes the witness
his own, as to such new matters, and the same rule applies "with
reference to impeaching his testimony as though he had been
called in the first instance by such party." McKelvy on Ev.
404; Starkie on Ev., 250 (10th ed). This rule seems unreason-
able. It is founded on the unsubstantial reason that the party
by presenting the witness represents him as credible. Hardly so
where the adverse party presents him first. But such is the
rule, so firmly set that in England and many of our states it
has been changed by statutes allowing the party to prove in-
consistent statements, as in Virginia in the case of the unfortu-
nate McCue, 103 Va. 870, where the old rule is seemingly crit-
icized, and the subject discussed. It is ridiculed in that great
work, Wigmore on Evidence.

I must not be taken as saying that a party is bound by what
his witness says. He cannot impeach his general reputation
for veracity or prove contradictory statements; but he may by
other witnesses prove that the facts are otherwise than as stated,
and it is no objection to any relevant evidence of material facts
on which he relies to sustain his case, that it may operate to
contradict and thus discredit his own witness. *Stout* v. *Sands,*
56 W. Va. 663; 30 Am. & Eng. Ency. L. 1129; 1st ed. same
812; Wharton on Ev., sec. 549; 3 Jones on Ev., sec. 860; 2 Wig-
more on Ev., secs. 907, 1051; *Hickory* v. *U. S.,* 151 U. S. 303;
McKelvy on Ev. 400; 2 Elliott on Ev., sec. 985; 6 Am. & Eng.
Anno. Cases, 707.

The rule which denies right to prove contradictory state-
ments of one's own witness is not infallible. Wigmore on Evi-
dence, vol. 2, sec. 906, says: "So far as impeachment by prior
self contradiction is, under any of the foregoing doctrines *pro-
hibited,* the prohibition does not apply to a *parly's admission,*
which is receivable as such, even though it be also a self-con-
tradiction of himself as a witness." *Hickory* v. *U. S.,* 151 U. S.
303, says that the rule does not apply to a party. We find in
that reliable work, Am. & Eng. Ency. L., vol. 30, 1130, that

where one's witness denies a contradictory statement the party cannot disprove it by other witnesses, "where it would not be admissible as independent evidence, and can therefore have no effect but to impeach the credit of the witness." Likewise Elliott on Ev., sec. 972. Thus, it is seen that if one calls a witness he may prove by another witness the former's contradictory statement, if that statement would be admissible if he had not called the witness, as, for instance, an admission against interest. If that former statement would come in as independent evidence, it can be proven, though the witness has denied it when called by the suitor. In this case R. E. Lee Armentrout was a party defendant; but what is here meant by "party" is one in interest, one whose admission is admissible. We all know that you can prove an admission of a party without laying any foundation which is required to impeach a witness not interested so as to make his admission evidence. R. E. Lee Armentrout made the sale of the horse and was payee of the note. His admission of unsoundness and warranty would be admissible, if he had not been used as a witness by the defendants. It was thus error to refuse to allow his admissions to go in evidence.

The court refused evidence to prove that the horse for which, in part, the note sued on was given was unsound. Notwithstanding the rule against one impeaching his own evidence, this evidence, under law above stated, would have been admissible if the fact sought to be proven were a good defence; but it is not alone, and therefore there was no error in its refusal. There is an implied warranty of title in sales of chattels, but not of *quality.* There must be fraudulent representation or express warranty of quality, soundness or fitness, as a general rule. The rule of *caveat emptor* here applies. *Mason* v. *Chappell,* 15 Grat. 572; *Burnside* v. *Burdett,* 15 W. Va. 702; *Jarrett* v. *Goodnow,* 39 *Id.* 602.

These principles call upon us to set aside and reverse verdict and judgment and remand for another trial, according to those principles, and it will be so ordered.

NOTE BY BRANNON, JUDGE.

If there were evidence of warranty in, then evidence of unsoundness would be admissible, but not alone.

*Reversed.*