EILEENE BENNETT *v.* JAMES W. BARTLETT *et als., Etc.*

(No. 6881)

Submitted May 12, 1931.   Decided May 19, 1931

W. *Bruce Talbott,* and *Lawrence R. Lynch* and *Guy H. Burnside,* for plaintiffs in error.

*Wyckoff & Wyckoff,* for defendant in error.

HATCHER, JUDGE:

This is an action for damages for personal injury in which the plaintiff recovered a verdict and judgment for $17,500.

The alleged injury occurred in the afternoon of January 19, 1928, on the brick highway near Pruntytown, while the plaintiff was a passenger (for hire) in a public bus operated by the defendant. It was raining at the time of the accident. In rounding a curve 233 feet from a concrete bridge, the bus got partly on the right hand berm of the road and before it entirely regained the hard surface, it ran into the side wall of the bridge, which tore out its right side and caused some of the seats to "pile up" on the plaintiff. Witnesses for the defendants said that an oncoming truck was taking the middle of the road and the driver of the bus pulled over on the berm to avoid a collision, and that when about 100 feet from the bridge the left front tire blew out, obstructing the efforts of the driver to prevent the wreck. Witnesses for plaintiff testified that they did not hear the blowout; that they were in position to have noticed the truck; that they did not see it; and that excessive speed prevented the bus from rounding the curve successfully and made it run out on the berm and into the bridge. The cause of the wreck is, therefore, a jury question.

As defendants contend that plaintiff suffered no material injury whatever in the wreck, and also challenge the amount of the verdict, a somewhat detailed statement of the evidence will be made. Immediately following the accident, plaintiff went to the home of Mrs. Charlotte Evans who resides close to the bridge. The plaintiff told Mrs. Evans that she did not think she was hurt; but Mrs. Evans said that the plaintiff was so excited and frightened that she didn't seem to realize what she was saying. Shortly afterwards, W. F. Six took plaintiff to her home which was in Pruntytown. He testified that she was very nervous and excited and seemed under the impression that he was taking her away from her home instead of towards it. Dr. Shaffer, a practicing physician, saw the plaintiff shortly after her arrival home. He found her to be very nervous and unable to give the details

of what had happened, and said that he "suspected a concussion because of the injury on her head." He did not treat her, but advised her family physician, Dr. F. S. Suddarth, of her condition. Dr. Suddarth, who had been plaintiff's physician for a number of years, attended her within a few hours after the wreck. He testified that he found "a considerable knot" on the back of her head; that she was suffering from shock and nervousness which in his opinion was caused by a concussion of the brain; that she remained in bed several weeks under the care of a trained nurse (at his orders), during which time she had such intense headaches that the administration of morphine was necessary; that she complained of dizziness and of the sensation of going backwards; that about a year or year and a half after the bus accident, she commenced having convulsions, which affliction had continued at intervals to the time of trial; and that the front of both her legs, from the knees down, had become very much discolored, and she dragged her right foot when walking. Dr. Suddarth stated that plaintiff was of a nervous temperament and had always been rather frail, but with the exception of her eyes she had been in good physical condition for some time before the accident; that he had never known of her having convulsions prior thereto; and that in his opinion her present condition is the result of concussion of the brain, is permanent, and will shorten her life.

Dr. H. H. Haines, a physician of Clarksburg, examined the plaintiff in April, 1928. He testified that she was then very nervous and unable "to handle her muscles" and that she had symptoms of cerebral concussion, which in his opinion had been caused by "a blow or injury."

The plaintiff testified that she received a blow on the back of her head when the bus wrecked. In addition to what her physician had said of her, she stated that since the wreck she had not been able to sleep normally and had been troubled with double vision, the scientific name for which is "diplopia". The evidence of plaintiff's suffering and other afflictions is supported by the testimony of her father, her husband, and the trained nurse. This evidence is not controverted except as to the diplopia.

Plaintiff was examined by Dr. Robert Sattler, an eye specialist of Cincinnati, in 1922, and he found that she had congenital weakness of the eyes. He testified: "She then had ametropia, that is, feeblesightedness. She also had asthenopia, to which we gave the name of muscular asthenopia which occasionally causes double vision. That is persistent and follows the long use of the eyes." He examined her in the summer following the accident, and while he found some aggravation of her original trouble did not find diplopia "due to a paralysized muscle." She was also examined by Dr. I. D. Cole, an eye specialist of Clarksburg, West Virginia, in April, 1928. Dr. Cole procured, for purposes of comparison, the results of the examination made by Dr. Sattler in 1922. Dr. Cole states that he found the right eye of the plaintiff worse in 1928 than reported by Dr. Sattler in 1922; that the left eye was about the same; that she made no complaint to him of double vision; and that while she may have suffered at times from that trouble, yet from his examination of the muscles of her eyes, he was certain that she did not have constant diplopia.

The defendant, relying on the evidence of Drs. Sattler and Cole, say that the plaintiff's claim of diplopia is discredited, that "false in one thing false in all," and that her testimony is not of sufficient weight to support the verdict.

The maxim, *falsus in uno, falsus in omnibus,* is "a rule of permission and is not mandatory." Jones, Comm. on Ev. (2nd Ed.), sec. 2473. It is within the discretion of the jury, and in fact is its duty, to accept some of the statements of a witness if found to be true, while disregarding others. *Levine v. Mantell,* 90 W. Va. 166, 172-3. Consequently, rejection of plaintiff's claim as to one affliction does not, of itself, entail the rejection of her other claims. For that matter, plaintiff's case would not be materially weakened if all of her testimony be disregarded except her statement that she received the blow on her head when the bus wrecked. The testimony of Drs. Shaffer and Suddarth establishes *prima facie* that the blow caused concussion of the brain; that of Drs. Suddarth and Haines traces the symptoms which followed to the concussion; and that of Dr. Suddarth and the trained nurse (as

well as others) proves the sequelae of the conclusion. When we take into consideration the pain, the dragging of the right foot, and the convulsions of plaintiff, all charged by Dr. Suddarth to the concussion, and not questioned by any witness, professional or laical, we cannot say the amount of the verdict indicates that the jury was prompted by prejudice or any other improper motive.

The defendants impute error to the giving of plaintiff's instruction No. 1. This instruction charged the jury initially that the defendants, as common carriers, were liable "for the slightest negligence," and later that they were held "to the greatest possible care and diligence compatible with the practicable operation of the vehicle." The rule of care, stated in this instruction, "is now established beyond controversy" according to an annotation in 45 A. L. R. 297. See also 5-6 Huddy Cyc. Auto Law (9th Ed.), sec. 161; *Venable* v. *Taxi Line,* 105 W. Va. 156, 162. Even so, the defendant's brief makes this criticism: "On hearing this instruction a jury would not know whether they should follow the first part of the instruction, which is without qualification, or the second part, containing the clause, 'compatible with the practical operation of the vehicle.' They might well take the view that they had the option of following the first part of the instruction regardless of whether such operation was compatible with the practical operation of the vehicle, or not." The brief overlooks that the qualification is a part of the rule of care (announced in the second part of the instruction) and that negligence is the result of a violation of the rule (in which the qualification is considered) and as such result, is not subject to qualification.

Error is also alleged in the giving of plaintiff's instruction No. 6, because it required of defendants the exercise of "a greater degree of care when driving during a falling rain and over a wet and slippery road than when driving under more favorable conditions." The brief says that instruction No. 1 had already charged the jury that defendants were required to exercise the greatest degree of care and that No. 6 virtually piled Ossa on Pelion by requiring of the defendants a greater degree of care in rainy weather than the greatest

degree of care. *The highest degree of care* is not an absolute, but a relative phrase. It does not imply continuity of the most perfect human care, but the highest degree of care which a man of ordinary prudence would bestow under similar circumstances. Such a man is tense when operating an automobile on a slippery road; he relaxes somewhat when the road is dry and other conditions are favorable. See the able discussion of this subject by JUDGE LIVELY in *Koontz v. Whitney*, 109 W. Va. 114, 153 S. E. 797, 798. When instruction No. 6 is regarded from this view, defendant's criticism seems to be without substance.

Defendants protest the giving of plaintiff's instruction No. 9 on the ground that it is a repetition of former instructions. This protest is well made, but the mere repetition of an instruction is not ground for reversal.

The defendants say that much testimony was introduced relative to doctors' bills, nurse hire, etc., not alleged in the declaration, and that it was error for plaintiff to fail by an instruction to limit properly the elements of damage which the jury should consider. This point is not well taken, as by instruction Nos. 5 and 8 the plaintiff did advise the jury what it might take into consideration in assessing damages. These instructions did not specifically exclude consideration of doctors' bills and nurse hire, but impliedly did so. If defendants desired specific exclusion of these items, they should have presented an instruction to that effect.

The defendants make a special point of error of the refusal to give their instruction No. 5. This instruction among other things would have charged the jury that if the motor bus was being operated at the time of the accident at the regular rate of speed of the schedule (approved by the State Road Commission) between Clarksburg and Grafton, then the defendants were not guilty of negligence. This charge vitiated the instruction, as reasonableness of speed at a particular point cannot be made to depend upon the scheduled speed. A bus might be operated with perfect safety at some places at a higher rate of speed than that scheduled, while at others (because of conditions unfavorable to speed) reasonable care might require a lesser rate than that scheduled. The scheduled

rate was not meant to apply constantly over the entire distance between the termini, but simply to indicate the average rate of speed over the route.

Defendants complain because Dr. Haines and Dr. B. F. Bird, respectively, were permitted to answer a hypothetical question based on facts which had not at that time been proved in evidence. This procedure was improper. But as the question was not involved and the facts upon which the question was based were later proved, we see no prejudice in this particular case because of the premature introduction of the physician's testimony. Defendants also complain because Dr. Suddarth was permitted to testify that in his opinion the trouble with plaintiff's eyes was occasioned by concussion of her brain. This complaint is based on the admission by Dr. Suddarth that he was not an eye specialist. The answer of the doctor was explained by him as follows: "There isn't any question but what the eye sight is controlled by the brain, and if you have a disorganized brain there isn't any reason in the world why it shouldn't injure the eye sight." With this explanation, we are of opinion that the answer of the doctor merely as a general practitioner, was permissible.

Refusal of the court to permit a witness for the defendants to answer a certain question is alleged as error. The defendants, however, did not vouch the record as to the answer of the witness, and it is not apparent from the record what the witness would have said. Consequently we have no way of determining whether the defendants were prejudiced.

Finding in the record no error prejudicial to defendants, the judgment of the circuit court is affirmed.

*Affirmed.*