ALI ABDULLA

*v.*

PITTSBURGH AND WEIRTON BUS CO., *etc.*

(No. 13469)

Decided March 25, 1975.

594

*Donell, De La Mater & Hagg, W. Dean De La Mater* for appellant.

*E. A. Zagula* for appellee.

HADEN, CHIEF JUSTICE:

This is an appeal by Pittsburgh and Weirton Bus Company, a corporation, from the final judgment of the Circuit Court of Hancock County, affirming the judgment of the Common Pleas Court of Hancock County in the amount of $20,000.00 entered in favor of Ali Abdulla. The common pleas jury awarded Abdulla a verdict in

the amount of $27,500.00 but the trial court's judgment reflected a deduction of $7,500.00, a *pro tanto* settlement previously obtained from a joint tort-feasor, George Neurohr. See, *Hardin v. New York Central R. Co.*, 145 W. Va. 676, 116 S.E.2d 697 (1960).

This action arose out of a motor vehicle accident occurring on July 10, 1963, in Weirton, West Virginia, at the intersection of Pennsylvania Avenue, Main Street and County Road. The vehicles involved in the collision were a bus owned and operated by the appellant as a common carrier and an automobile operated by the released party, George Neurohr, who was also an original defendant in the civil action. The appellee, a passenger in the bus at the time of the accident, brought this action for injuries sustained by him when he was thrown forward at the time the collision occurred.

The undisputed evidence in this case reveals that the bus, proceeding along Pennsylvania Avenue in a westerly direction, had stopped for the purpose of receiving and discharging passengers in the right lane of Pennsylvania Avenue, a two-lane street west, at or near Penn-Way Pharmacy which was located approximately seventy-five feet east of the intersection where the accident occurred. The Neurohr automobile, likewise proceeding in a westerly direction along Pennsylvania Avenue, approached the bus from the rear in the same lane of Pennsylvania Avenue. Observing that the bus was stopped and that the traffic signal at the intersection was green, Neurohr testified that he drove his automobile into the center lane of traffic to go around the bus and then proceeded into the intersection where he intended, and thereafter attempted, to execute a right turn north onto County Road. Within the same approximate time-frame, the bus resumed its journey and moved forward toward its westerly travels to Main Street and beyond. The collision occurred when both vehicles occupied the same space at the same time.

As is typical in such cases, many of the material facts relevant to the collision were in conflict. The position of

the bus while stopped was variously fixed by the witnesses at from seventy-five feet from the point of collision, to approximately fifty feet, to just a "few" or "two" feet. The relative positions of the vehicles at the time the bus resumed movement was, likewise, in dispute, as were the relative speeds of the vehicles prior to and at the time of impact.

With regard to Abdulla's injuries, his testimony that he was thrown forward in the bus when the collision occurred and "switched" his back, was essentially unassailed by the defense. The extent of the resulting injuries, and more particularly, his subjective complaints of pain and suffering and resulting inability to work and perform other strenuous activities, although not directly controverted by defense witnesses, came under close scrutiny during vigorous cross-examination. Essentially, however, it was established that the plaintiff had sustained a low back strain or sprain, causing intermittent pain and discomfort resulting in certain physical limitations which, when coupled with osteoarthritic changes in his spine, gradually, but seriously, diminished his capacity to labor in the steel mill. His injuries, pain and suffering and declining physical condition, dating from the approximate time of the accident until just shortly before the trial of this matter, were supported by the employer and medical testimony.

In addition to the trauma caused by the bus-car accident, medical examination for the back injury also revealed that Abdulla had contracted diabetes. The indiscriminate admission of special damages relating to treatment of appellant's diabetic condition into the proof of damages in the case provides the foundation for a significant issue presented in this appeal.

Ali Abdulla raises a threshold issue which must be resolved before the bus company's assignments may be considered on their merits. On the premise that the West Virginia Rules of Civil Procedure do not apply to proceedings in which a circuit court functions as an intermediate appellate court, the appellee cross-assigns error

in the granting of this appeal. Although conceding that appellant prosecuted his appeal to the circuit court within four months from the date of the trial court's order overruling its motion for judgment or for a new trial, Abdulla contends that the appeal time actually expired four months after the entry of the judgment order in the trial court.

The contention is without merit. *Rule* 72, W. Va. R.C.P. extends the time for appeal where appellant has moved seasonably for appropriate relief under *Rules* 50(b), 52(b) and 59, and the appeal time commences to run from the entry to the order granting or denying a motion specified in this *Rule*. Since March 3, 1969, the *Rules* have been applicable to any appellate review conducted by a trial court of record except as qualified in *Rule* 81. See, *Rules* 1, 81(a)(1), W. Va. R.C.P., as amended.

The appellant has assigned twenty-eight alleged errors, several of which are divided into multiple contentions. In brief and upon presentation in oral arguments, these assignments were consolidated into nine categories. While we appreciate the preciseness with which counsel approaches his case, it would appear that the case may be more easily resolved if the issues are further summarized. Accordingly, this Court will give attention to the sufficiency of the evidence adduced and applicability of legal principles contained in the trial court's charge to the jury in relation to the two separable issues of liability and monetary damages, the traditional components of personal injury litigation. In doing so, we will also discuss competency and admissibility of certain evidence relating to both the liability and damage aspects of the case.

Where, in this opinion the Court recites conclusory factual statements through summarization or characterization, we have done so with the perspective that a jury has resolved these matters in favor of the appellee, although such may have been in sharp conflict at trial. See, *syllabus* point 6., *Weirton Savings & Loan Company v. Cortez*, W. Va., 203 S.E.2d 468 (1974); *Levine v.*

*Peoples Broadcasting Corp.*, 149 W. Va. 256, 259, 140 S.E.2d 438, 441 (1965).

## I.

The plaintiff tried this civil action on the theory that his injuries were the proximate result of concurrent negligence of the bus driver in failing to maintain a proper "lookout" to avoid collision with the automobile operated by the joint tort-feasor, Neurohr. The bus company defended on several bases: (1) That Abdulla's injuries were the sole proximate result of Neurohr's negligence; (2) that, from the company's standpoint, the accident was unavoidable; (3) that the company's driver was confronted with a sudden emergency; and, (4) that it was not chargeable for its driver's failure to foresee that Neurohr would violate the statutory rules of the road by turning a vehicle from a center lane of traffic across a right lane occupied by the defendant's moving bus.

Neurohr's negligence was not a direct issue in the case. Based upon his admission that he turned his automobile into and across the pathway of the bus so as to make a right turn from Pennsylvania Avenue onto County Road, the trial court properly instructed the jury that Neurohr was actionably negligent, as a matter of law. Suffice it to say that Neurohr violated a variety of statutory responsibilities. See, e.g., *W. Va. Code* 1931, 17C-7-3(a) (duty of overtaking vehicle); 17C-7-9 (when travel in center lane authorized); 17C-8-8(a) and (b) (duties of "turning" vehicle). Numerous decisions of this Court have determined or affirmed that similar conduct constituted actionable negligence. See, e.g., *Piper v. Miller*, 154 W. Va. 178, 173 S.E.2d 662 (1970); *Adkins v. Minton*, 151 W. Va. 229, 151 S.E.2d 295 (1966); *Richmond v. Campbell*, 148 W. Va. 595, 136 S.E.2d 877 (1964); *Overton v. Fields*, 145 W. Va. 797, 117 S.E.2d 598 (1960). In the context of this litigation, Neurohr's actionable negligence was relevant only if the trial court or the jury were to have considered it to be the sole proximate cause of Abdulla's injuries. The trial court refused to direct a verdict upon appellant's contention that

Neurohr was wholly responsible for plaintiff's injuries; the jury affirmatively found that the bus company was concurrently responsible with Neurohr for plaintiff's injuries. The correctness of those legal and factual determinations is the essence of the appellant's assertion on the issue of liability.

We conclude there was sufficient evidence of the bus company's actionable negligence to take the case to the jury. With full recognition of Neurohr's presumed negligence and active part in causing plaintiff's injuries, we direct our attention to the duties of a common carrier toward its fare-paying passengers and the evidence indicating breach of those duties in respect to Mr. Abdulla. A common carrier is not an insurer of its passengers' safety. *Syllabus* point 2., *Fisher v. West Virginia & P. R. Co.*, 39 W. Va. 366, 19 S.E. 578 (1894); *Perkins v. Monongahela Valley Traction Co.*, 81 W. Va. 781, 95 S.E. 797 (1918). See also, *Koon v. Monongahela West Penn Public Service Company*, 119 W. Va. 76, 192 S.E. 332 (1937); *Kennedy v. Chesapeake & Ohio Railway Company*, 68 W. Va. 589, 70 S.E. 359 (1911). Nevertheless, it is held accountable to very high standards indeed:

> "Where the relation of common carrier and passenger exists, the carrier owes to the passenger the duty to use the *highest degree* of *care* compatible with the practical operation of a vehicle." (Emphasis supplied). *Syllabus* point 2., *Laphew v. Consolidated Bus Lines, Inc.*, 133 W. Va. 291, 55 S.E.2d 881 (1949).

Accord: *Isabella v. West Virginia Transportation Co.*, 132 W. Va. 85, 51 S.E.2d 318 (1948); *Bennett v. Bartlett*, 110 W. Va. 478, 158 S.E. 712 (1931); *Venable v. Gulf Taxi Line*, 105 W. Va. 156, 141 S.E. 622 (1928). In the context of a concurrent negligence claim by a passenger against a public carrier, it is well settled that:

> "A carrier of passengers cannot excuse the *slightest negligence* on its part, resulting in injury to a passenger, by showing negligence of an intervening agency, contributing to or proximately causing the injury. It must be *wholly free*

from negligence on its part." (Emphasis supplied). *Syllabus* point 13., *Brogan v. Union Traction Company*, 76 W. Va. 698, 86 S.E. 753 (1915).

Accord: *Kennedy v. Chesapeake & Ohio Railway Company, supra; Washington A. & Mt. V. Ry. Co. v. Trimyer*, 110 Va. 856, 67 S.E. 531 (1910). In other words, any showing of negligence on the part of the bus company which proximately contributed to the accident and plaintiff's injuries is actionable.

The evidence introduced on behalf of Ali Abdulla unquestionably demonstrated that he was injured by the collision between the Neurohr automobile and the appellant's bus. Although the extent of those injuries is the subject of contention, *infra*, the fact of occurrence was well documented by plaintiff's testimony, by that of his acquaintance and coworker Yazevac, and by the personnel records from the steel company where he was employed. In one fashion or another, plaintiff proved immediate manifestation of injury with onset of pain, difficulty in walking from the scene of the accident, resultant loss of work and diminished capacity to work dating from the injury. Under West Virginia law, this alone is sufficient to protect plaintiff's case in chief from a directed verdict and to raise a *prima facie* case of negligence on the part of the bus company.

Commensurate with the high standards of care required of a public carrier to its paying passengers, "a *prima facie* case of negligence on the part of defendant arises when it is shown that plaintiff was injured while passively riding as a passenger in defendant's vehicle, operated as a common carrier of passengers." Part *syllabus* point 2., *Isabella v. West Virginia Transportation Company, supra*. Unless rebutted by the case of the defense, plaintiff's case should be permitted to go to the jury. *Id., Laphew v. Consolidated Bus Lines, Inc., supra*. Accordingly, we hold there was no error in the trial court's refusal to direct a verdict in favor of appellant at the close of plaintiff's evidence.

On the other hand, the passenger claimant is not so protected after rebuttal evidence is introduced by the carrier in its defense. According to *Mulroy v. Co-Operative Transit Company*, 142 W. Va. 165, 95 S.E.2d 63 (1953) and *Tochek v. Monongahela Transport Co.*, 109 W. Va. 20, 152 S.E. 776 (1930), whether the appellant was entitled to a directed verdict at the conclusion of the evidence must be determined from all the evidence in this case considered in light of the high standard required of carriers, but disencumbered of the presumption of negligence favoring the injured plaintiff. In our appraisal of the evidence, we note the distinction.

The bus company's assertion of no negligence or excusable conduct on its part, i.e.: (1) no improper "lookout"; (2) no duty to foresee that another motorist will violate the "rules of the road"; and (3) sudden emergency excusing lack of appropriate response, appears to be premised upon certain factual absolutes which do not appear in the evidence.

For example, because appellant's driver Vucjak, prior to trial, with the aid of appellant's counsel, took measurements from a point in front of the entrance to Penn-Way Pharmacy to a point in the center of the intersection, approximately where the collision occurred, appellant asserts that the accident could have occurred only one way, by Neurohr swiftly approaching its bus from behind, just as swiftly changing lanes to pass the slow-moving bus and then abruptly and without warning cutting or turning across into the lane occupied by the moving bus. Although it may be true that the measurement indicated seventy-five feet from the point where the driver thought he had discharged and taken on passengers to the approximate point where the accident occurred, we know of no physical law that would conclusively support the bus company's version of the accident. When conflicting evidence demonstrates, as it did here, that several variables are present, such issues are better left to the jury than to the "expertise" of trial and appellate courts. In this case there was conflict as

to speed, the point and place of impact, manner of impact, relative positions of the vehicles immediately prior to the accident, and the location of the bus prior to resuming its "run" toward Main Street. Under these circumstances, we shall not presume to second-guess the jury. We believe that the lower courts were also wise in this regard.

It would be pointless to explore similar assertions made by appellant on the liability issue. On these controverted facts, we believe it is appropriate to note that the jury, as easily, could have concluded that the bus driver, while moving the bus toward the intersection, noted the presence of the turning automobile at or near the left front of the bus and assumed, incorrectly, that it would not continue its turning procedure into the path of a moving object several times larger and heavier than the automobile. Apparently the jury chose this or some similar version urged by the plaintiff. In any event, we are not disposed to disturb the factual determination of the jury.

Comparatively, the negligence indicated by this record strongly predominates against the driver of the automobile. Nevertheless, in recognition of the high duty enjoined upon public carriers, and after reviewing the evidence, we do not believe it can be fairly stated, as a matter of law, that the driver of the bus exercised the diligence required of him and that he could not have reasonably foreseen a situation endangering his passengers. The question of concurrent negligence was properly submitted to the jury. See, *Isabella v. West Virginia Transportation Company, supra.*

In the trial court's charge to the jury, it incorporated plaintiff's proffered instructions on the legal principles given recognition by this Court in our previous discussion. Additionally, the trial court fully and fairly instructed on the appellant's several theories of defense, including, no negligence on defendant's part, sole actionable negligence attributable to Neurohr, no duty upon the bus company to foresee that Neurohr would violate

the statutory duties, sudden emergency, and "lookout." The trial court did not explicitly instruct on "unavoidable accident" as requested by the company; but certainly appellant was protected when the jury was told that it could place the sole responsibility for plaintiff's injuries upon Neurohr. On the whole, the court fairly and correctly instructed the jury on the issue of liability and we find no error in the charge:

> "Although a court is required to instruct or charge a jury on every important theory of claim or defense supported by the evidence of the case, the court is not bound thereby to charge the jury in the exact language proffered by a party's instruction. Within the constraints of fairly presenting all parties' conflicting theories, the court is authorized by *Code* 1931, 56-6-19 to deviate from the language of proffered instructions so as to effect an ordered and logically connected charge to the jury." *Syllabus* point 2., *Parker v. Knowlton Construction Company Inc.* (decided January 14, 1975, reh.den. and opinion clarified March 11, 1975), ___ W. Va. ___, 210 S.E.2d 918 (1975).

The trial court refused two of appellant's instructions which would have detailed the extent of Neurohr's negligence *vis-a-vis* breach of statutory duties. We find no error in this regard, believing that the jury might have been confused by such instructions and thus, unable to give adequate consideration to the real issue: whether the bus company was guilty of actionable concurrent negligence.

One irrelevant reference to "approaching" vehicles contained in the court's charge also provides no basis for prejudicial error in this case. Considering the fact that the jury viewed the accident scene, heard the testimony and referred to a prepared sketch of the accident site, among other things, makes such reference mere surplusage in the charge and harmless error, at best. See, *Rule* 61, W. Va. R.C.P.; *W. Va. Code* 1931, 58-1-2; *Boggs v. Settle,* 150 W. Va. 330, 145 S.E.2d 446 (1965).

The appellant also contends that the trial court erred in permitting the plaintiff to lead a witness on direct examination without requiring foundation to demonstrate that such witness was hostile to the plaintiff. In the trial of this case, the testimony of the bus driver, Vucjak, was of considerable significance in proving or disproving negligence imputable to the company. Although Vucjak was not a named defendant, Abdulla attempted to elicit testimony by leading questions upon the theory that he was a responsible agent of an adverse party, that is, one who is named in the second sentence of *Rule* 43(b), W. Va. R.C.P. The trial court quite properly rejected this contention and ruled that he could not be examined as an adverse party. Counsel for the plaintiff, thereafter, proceeded with the examination without treating the witness as adverse or hostile. During the direct examination, however, counsel claimed surprise concerning the witness' testimony regarding the parked location of the bus and the corresponding distance between the front of the bus and the intersection based upon contradictory testimony given by him at a previous trial. Counsel then requested the court's permission to pursue that line of inquiry by treating the witness as hostile. Without further development of the issue of "surprise," the trial court permitted counsel that latitude to pursue the asserted discrepancy.

Interestingly, the two authorities cited by counsel for the appellant—*State v. Carr*, 65 W. Va. 81, 63 S.E. 766 (1909) and *Tate v. Commonwealth*, 155 Va. 1016, 154 S.E. 508 (1930)—are also the authorities relied upon by counsel for the appellee. Those authorities represent the recognized discretionary feature of the rule as well as the requirement of demonstrated hostility:

> "Hostility or reluctance of a witness to disclose what he knows, justifies the court, exercising sound discretion, in relaxing the rule against the propounding of leading questions; since, in such case, the substantial reason for the rule itself does not exist." *Syllabus* point 5., *State v. Carr*, *supra*.

However, where the witness is not shown to be adverse on the record or shown to have made prior inconsistent statements, it is error for the court to declare him adverse merely upon counsel's statement that he is hostile. *Tate v. Commonwealth, supra.* See also, *Crum v. Ward,* 146 W. Va. 421, 122 S.E.2d 18 (1961).

On the other hand, there is ample authority in this State for the proposition that, where a party is surprised by unfavorable testimony of his own witness, he may interrogate the witness as to previous inconsistent statements. *Hartley v. Crede,* 140 W. Va. 133, 82 S.E.2d 672 (1954); *Lambert v. Armentrout,* 65 W. Va. 375, 64 S.E. 260 (1909). See also, *State v. Blankenship,* 137 W. Va. 1, 69 S.E.2d 398 (1952); *State v. Wolfe,* 109 W. Va. 590, 156 S.E. 56 (1930); *State v. Justice,* 107 W. Va. 490, 148 S.E. 843 (1929); and *State v. Swiger,* 105 W. Va. 358, 143 S.E. 85 (1928).

The testimony given by witness Vucjak concerning the distance he parked from the intersection was, we believe, sufficiently at odds with his previous testimony in the former trial, as demonstrated by his later responses to leading questions, to warrant the ruling of the trial court, allowing interrogation of this witness by leading questions. Although better practice would have demonstrated the witness' hostility more explicitly, we find no reversible error in the exercise of discretion permitting this method of interrogation. See, *Tate v. Commonwealth, supra.*

For the foregoing reasons, we regard the jury's resolution of liability to have "closed the book" on the issue of the bus company's actionable negligence.

## II.

As previously recounted, the fact that Abdulla was injured in the bus accident of July 10, 1963, is not an issue on this appeal. Dr. Myer Bogarad, the plaintiff's personal physician examined him shortly after the accident, diagnosed the problem as a "contused back and strain and myositis of the muscles of the back" and treated him for that problem from July 15, 1963 until

December 10, 1971, shortly before the second trial of this action. The doctor described the injury, eighty-eight outpatient or office treatments and three hospitalizations in August and October 1963 and January 1969, the treatments rendered, and testified regarding the reasonableness of and necessity for plaintiff's hospital and medical care. Abdulla also introduced other medical testimony and employment history of considerable volume relating to treatment of the injuries caused by the accident and the affects of the accident upon his health and capacity to work.

In the course of proving special damages, plaintiff introduced a hospital bill for a period beginning October 28, 1963, through Dr. Myer Bogarad's testimony that such bill was reasonable in amount and necessary for the treatment of Abdulla's injuries. The admissibility of this evidence is assailed on the basis that Dr. Bogarad's son and associate was, in Myer Bogarad's absence, the treating physician on this occasion. In view of the fact that the plaintiff was Dr. Myer Bogarad's patient, and the medical witness extensively documented his treatment of the plaintiff and his knowledge of the patient's condition prior and subsequently to the particular hospitalization, we believe his testimony retifying the necessity of such treatment to be error-free. As an expert witness, knowledgeable of hospital and medical costs in the Weirton area, Dr. Bogarad's testimony as to reasonableness, an opinion of value, is likewise unassailable. The trial court did not abuse its discretion in the admission of this item of damages. See, *Jordan v. Bero*, ____ W. Va. ____, 210 S.E.2d 618, 637 (1974), *syllabus* point 15.

In the documentation of Abdulla's injuries attributable to the bus accident, extraneous physical conditions and injuries also came to light. Cross-examination revealed that Abdulla suffered from osteoarthritis, a common degenerative condition related to aging. Additionally, it was disclosed that he had filed workmen's compensation claims for industrial injuries or occupational diseases in the interim between the accident of

1963 and the second trial in 1971. Although the foregoing extraneous matters were not a source of legal complication in the proof of damages, the same cannot be said of plaintiff's diabetic condition.

One of the appellant's principal assignments of error in regard to proof of damages involves Abdulla's diabetes which was discovered upon his first admission to the hospital in August 1963 for treatment of his back injuries. During cross-examination of Dr. Bogarad and after the hospital bills of August 1963 and January 1969 had been introduced into evidence, appellant's counsel elicited testimony which indicated that Abdulla received incidental "treatment" for diabetes, in addition to that received to alleviate discomfort to his back. From our review of the evidence it appears that Abdulla was given a routine urine test upon admission to the hospital which revealed the diabetic condition. Subsequently, but merely incidental to treatment of his back injury, he was placed on an 1800 calorie "A.D.A." diabetic diet, rather than the much-maligned "regular" hospital diet. To assure control of the diabetes, Abdulla was also given a Urinase pill on a daily basis during hospitalization.

Pursuing this matter further on cross-examination, appellant's counsel also elicited that Abdulla was admitted to hospitalization solely for treatment of his diabetes in October 1966 for a period of approximately one week. As respects this hospitalization, it is to be noted that plaintiff did not offer proof of this bill as an item of special damages.

Based upon the foregoing, counsel urged that the hospital bills of August 1963 and January 1969 were tainted with cost elements unrelated to plaintiff's claimed damages and moved the court to exclude those specials, in their entirety, from the jury's consideration. The court overruled the motion, and that alleged error is asserted here to have been prejudicial to appellant's defense.

Although this Court has not addressed this point, there is available textual commentary supported by decisions of other jurisdictions. The question of whether

an entire medical bill which includes minimal or some treatment for an unrelated preexisting condition is admissible, is discussed in 3 *Personal Injury: Damages* § 3.04[3][b] (Matthew Bender & Co. 1965):

> "Plaintiff must establish the nature and extent of the medical treatment, hospital and nursing care, and the like, that was necessitated by the wrongful act of the defendant. Where the medical expenses are for treatment of other ailments, only one of which was caused by defendant, plaintiff has the burden of proving what portion of his medical expense is attributable to defendant's act, and what portion to the preexisting condition, and if plaintiff fails to do so, the entire medical bill may be excluded from evidence." *Id.*, at 115-16.

In those jurisdictions which have confronted this issue, the unrelated expenses, if substantial, have resulted in exclusion of the bill at trial or reversible error on appeal. See, *Lester v. S. J. Alexander, Inc.*, 127 Ga.App. 470, 193 S.E.2d 860 (1972); *Hall v. St. Louis Public Service Co.*, 266 S.W.2d 597 (Mo. 1954); *Michalski v. Wagner*, 9 Wis.2d 22, 100 N.W.2d 354 (1960). Compare, *Strickland v. English*, 115 Ga.App. 384, 154 S.E.2d 710 (1967); *Wright v. Globe Ins. Co.*, 207 So.2d 889 (La.App. 1968); *Powers v. Campbell*, 79 N.M. 302, 442 P.2d 792 (1968).

We are in agreement with the rationale of those cases: An injured party bears the burden of proving damages with proper evidence. A negligent party cannot be held to respond in compensatory damages for that which was not the proximate result of his tort. See, 29 Am.Jur.2d *Damages* §§ 13, 14 (1965); Compare, *Horn v. Bowen*, 136 W. Va. 465, 67 S.E.2d 737 (1951). Nevertheless, proof of damages in a personal injury case is not susceptible to pristine isolation from all extraneous matters. As is demonstrated in this case, the mere passage of time and events causes a jury to view a different plaintiff than the man who was injured in 1963. Consequently, we believe that the admission of proof of special damages, minimally tainted by extraneous matters, is addressed

to the sound discretion of the trial court. If such matters may be isolated, they should be removed from the jury's consideration. If such are so unsubstantial that there is little or no possibility of prejudice, they can be ignored under the salutary protection of harmless error. See, *Rule* 61, W. Va. R.C.P.; *Whittaker & Jarrett v. Pauley*, 154 W. Va. 1, 6, 173 S.E.2d 76, 79 (1970).

Viewing the questioned "diabetes" evidence of the case, we are of the opinion that the dietary alternative given diabetic patients and the urine test which indicated Abdulla's diabetes were no more than routine hospital practices. As such, these practices may be characterized as necessary, albeit ancillary, treatment of plaintiff's back injuries. The cost of the Urinase pill to control diabetes is, of course, too insignificant to suggest *remittitur*. There is no abuse of discretion or reversible error on this point.

The appellant assigns as error the trial court's refusal to give its proffered Instruction No. 9. That instruction, in essence, would have told the jury not to consider permanent injuries. Although the court below agreed there was no proof of permanent injury it refused the instruction because plaintiff had abandoned attempts at proof of permanent manifestations of the original back injury. In its charge, the court instructed that the jury could make provision for Abdulla's loss of earnings, the reasonable value of hospital and medical expense incurred since the date of injury, and the pain and suffering of the plaintiff. We agree that there was no necessity to negative that which a party has not put into issue; such instruction would have been irrelevant to the case:

> "In the absence of evidence reasonably tending to establish permanent injury of the plaintiff, or the probability of future pecuniary loss resulting therefrom, an instruction including such elements among those proper to be considered by the jury in determining its verdict, is erroneous." *Syllabus* point 6., *Miller v. Gas Company*, 88 W. Va. 82, 106 S.E. 419 (1921).

Accord: *Jordan v. Bero, supra.* See also, *Parker v. Knowlton Construction Company, Inc., supra; Herold v. Clendennen,* 111 W. Va. 121, 161 S.E. 21 (1931).

Another assignment relating to the propriety of the damage award in this case concerns the references by plaintiff's counsel to the *ad damnum* clause, first in opening statement and, again, in closing argument to the jury. Counsel, in each instance, advised the jury that the amount sought was $50,000.00, to which the defendant objected and then was overruled by the court. It is to be noted, however, that the trial court routinely instructed, *ore tenus,* that statements of counsel were not to be considered as evidence in the case. Appellant here contends that the trial court's subsequent refusal to give a curative instruction was prejudicial.

The bases for such contentions are: (1) that the jury was permitted to consider amounts wholly unsupported by the evidence; and (2) the introduction of such amount into a damage action involving no proof of permanent impairment demonstrates that the jury was allowed to entertain a mistaken view of the case which resulted in an excessive verdict, as a matter of law.

This Court recently expressed disapproval of the practice of advising the jury concerning the monetary figures of the *ad damnum* clause. "In the trial of negligence cases, the better practice is to withhold any monetary figures from the jury's consideration which might be suggestive of amounts not proven in evidence." Part *syllabus* point 2., *Jordan v. Bero, supra.* The reference to the *ad damnum* in that case, however, was held not to constitute prejudicial error. Nevertheless, while the impropriety of such argument is not prejudicial *per se,* it cannot be disregarded in considering the broader question of whether the verdict was excessive when compared with competent proof of damages.

Additionally, when we consider that the bulk of the recovery in this case was based upon claims for pain and

suffering, we are mindful of the overriding principle of *Crum v. Ward*, 146 W. Va. 421, 122 S.E.2d 18 (1961):

> "In the trial of an action for damages for personal injuries based in part on pain and suffering, testimony attempting to place a money value on pain and suffering is inadmissible." *Syllabus* point 4., *id.*

Moreover, we recognize and adhere to the statement in the opinion in that case that counsel in arguments to the jury ought not to be allowed arguments based on facts not in the record or facts which are not even admissible. *Id.*, at 434 of the West Virginia Report.

Plaintiff counsel's strategy to introduce a purely speculative amount for the jury's consideration entails a very high risk in a case where permanent impairment is not proved. This practice is to be thoroughly and particularly condemned where, as here, it jeopardizes an otherwise unassailable verdict.

On the evidence of this case, the award of $27,500.00 is, to understate, ample. In this case, plaintiff proved, sufficient for a jury's consideration: (1) loss of earnings in the amount of $3,438.05; hospital bills of $783.67; medical bills of $508.00—all totaling $4,729.72. The court instructed the jury that it could also make an award for pain and suffering. By our calculation, the jury awarded Abdulla $22,770.28 for this element of compensatory damages.

It is fortuitous that the plaintiff had eight years to develop his case. Were it not for the testimony that his back trouble attributable to the accident necessitated some eighty-eight outpatient visits and three hospitalizations for treatment, coupled with his employer's testimony of his progressively diminished capacity to perform his duties of employment, his award might have been struck down by this Court and remanded for a retrial on the issue of damages. See, *Richmond v. Campbell*, 148 W. Va. 595, 136 S.E.2d 877 (1964).

Considering all of the evidence of this case, and being mindful of the infirmities of appellate courts to decide facts from the record alone, we choose to be guided by a salutary rule:

"A jury is better able to judge of the circumstances of a case, the weight of the testimony, and the peculiar hardships and aggravations attendant upon an injury, and its verdict for damages for personal injury, which is not so excessive as to indicate, as a matter of law, passion, prejudice, partiality, mistake, or lack of due consideration, will not be set aside by this Court on that ground." *Syllabus, Williams v. Penn Line Service, Inc.*, 147 W. Va. 195, 126 S.E.2d 384 (1962).

The judgment of the Circuit Court of Hancock County is affirmed.

*Affirmed.*

BERRY, JUSTICE, *dissenting:*

I dissent from the majority opinion because I am of the opinion that no actionable negligence has been shown on the part of the bus driver and that improper evidence was admitted over the objection of the defendant with regard to damages.

It is true that a common carrier owes the duty to its passengers to use the highest degree of care compatible with the practical operation of the vehicle, but that does not require the driver of the bus in the case at bar to anticipate that a driver of another car would violate the law by attempting to turn right from the left hand lane at an intersection in front of the bus. The driver of the other vehicle was negligent as a matter of law and such negligence was the proximate cause of the accident, and therefore the bus driver cannot be charged with negligence. *Tochek v. Monongahela Transport Co.*, 109 W. Va. 20, 152 S.E. 776 (1930). In other words, it appears that this accident would have occurred even though the bus

driver was exercising the highest degree of care and thus, the motion for a directed verdict by the defendant bus company should have been granted by the trial court.

The trial court also committed reversible error in allowing the jury, over the objection of the defendant, to consider in assessing damages charges by a hospital for services and expenses for an apparent injury not related in any manner to the injury received in the accident. Even if such charges were only a small part of the hospital bill, the principle is the same as if it were a large part. The trial court should have instructed the jury not to consider such charges or other injuries and the failure to do so constituted error. *Bartley v. Western Maryland Ry. Co.*, 81 W. Va. 795, 95 S.E. 443 (1918).